TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-95-00742-CR






Albert Ray Rodriguez, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 0952816, HONORABLE BOB PERKINS, JUDGE PRESIDING






 This appeal is taken from a conviction for felony murder. Tex. Penal Code Ann.
§ 19.02(b)(3) (West 1994). After finding appellant, Albert Ray Rodriguez, guilty, the jury assessed his
punishment at fifty years' imprisonment and a fine of $4,000.


POINT OF ERROR

 In his sole point of error, appellant contends that the trial court erred in overruling the
objection to the court's jury charge regarding the offense of felony murder because the merger doctrine
barred his conviction for felony murder.


FACTS

 The sufficiency of the evidence to sustain the conviction is not challenged. A brief recitation
of the facts will place the point of error in proper perspective. The victim, James Beaty, was shot and killed
while riding as a passenger in a red Pontiac Firebird on Francisco Street in Austin on the night of April 21,
1995. It was two days before Beaty's nineteenth birthday. Michelle Esquivel, Beaty's girlfriend, who was
driving, was shot in the right thigh. Joseph Michael Gonzales, a passenger in the rear seat, escaped injury.

 Appellant testified that he had purchased a .45 caliber handgun "off the street" the night
before the shooting and had a friend purchase ammunition for the weapon on Friday morning, April 21st. 
That night the 17-year- old appellant was in the back yard of his parent's home talking on a cordless
telephone when he saw a red Pontiac Firebird drive past. He retrieved the pistol which he had concealed
under a car and walked to the front of the house. There was testimony that the Firebird had driven past
the house once or twice. When the Firebird appeared again after the appellant had obtained his pistol, he
observed the Firebird "slow down." Appellant recognized Beaty as the front seat passenger. Appellant
testified he then "panicked" and fired the pistol repeatedly at the Firebird, perhaps eight times. Appellant
claimed he fired the pistol at the driver's door, despite the fact that Beaty, of whom he was putatively
afraid, was seated in the passenger seat. Appellant explained that Beaty had threatened his life, that
thereafter there had been a drive-by shooting at his parents' home where he lived, and that he had been
shot at while in his own automobile only days before the fatal incident. Appellant could not connect Beaty
with the two shootings, but believed the gang to which Beaty belonged was involved. Appellant related
that at 2:00 or 3:00 a.m. on Friday before Easter Sunday 1995, he and a cousin had driven to a Jack-In-The-Box restaurant; that Beaty and Michelle Esquivel were working at the drive-thru window; that while
he knew Beaty as Pollo Loco (Crazy Chicken) and knew he was a member of the Bros Gang, there had
been no difficulty between them; that Beaty began to stare at him, threw gang signs at him, and then
threatened his life. Appellant got his food order and left. He later saw Beaty on Easter Sunday in a park. 
Beaty again threw gang signs, but no trouble developed because appellant left the park. Appellant denied
being in a gang and claimed the Outloz or Oz group to which he belonged was merely a graffiti group.

 Michelle Esquivel testified that she and Beaty had been at the home of relatives nearby and
had gone to a store and were returning to their relatives' house when they were fired upon. They had
offered Gonzales a ride when they encountered him at the store.

 Chief Medical Examiner, Dr. Roberto Bayardo, testified that Beaty died from "massive
internal bleeding due to a gunshot wound that penetrated his body in the left upper back and exited through
the right chest wall." The .45 caliber weapon was recovered and the bullets retrieved from the car and
elsewhere were shown to have been fired from appellant's firearm.


INDICTMENT AND JURY CHARGE Subsection (b) of section 19.02 of the Texas Penal Code under which appellant was
charged provides:


(b) A person commits an offense if he:


 (1) intentionally or knowingly causes the death of an individual;


 (2) intends to cause serious bodily injury and commits an act clearly dangerous to
human life that causes the death of an individual; or


 (3) commits or attempts to commit a felony, other than manslaughter, and in the
course of and in furtherance of the commission or attempt, or in immediate flight
from the commission or attempt, he attempts or attempts to commit an act
clearly dangerous to human life that causes the death of an individual.



Tex. Penal Code Ann. § 19.02(b) (West 1994). (1)


 Section 22.05 (Deadly Conduct) of the Texas Penal Code provides:



(a) A person commits an offense if he recklessly engages in conduct that places another
in imminent danger of serious bodily injury.


(b) A person commits an offense if he knowingly discharges a firearm at or in the
direction of:


 (1) one or more individuals; or


 (2) a habitation, building, or vehicle and is reckless as to whether the habitation,
building, or vehicle is occupied.


(c) Recklessness and danger are presumed if the actor knowingly pointed a firearm at or
in the direction of another whether or not the actor believed the firearm to be loaded.


(d) For purposes of this section, "building," "habitation," and "vehicle" have the meanings
assigned those terms by Section 30.01.


(e) An offense under Subsection (a) is a Class A misdemeanor. An offense under
Subsection (b) is a felony of the third degree.



Tex. Penal Code Ann. § 22.05 (West 1994). (2)

 The instant indictment charged appellant under all three modes of committing first degree
murder under section 19.02 in one count with three separate paragraphs. The third paragraph charged
felony murder by alleging that appellant 


did then and there commit a felony, namely, deadly conduct, and in the course and
furtherance of the commission of said felony commit an act clearly dangerous to human life,
namely, knowingly discharge a firearm, a deadly weapon, at and in the direction of one or
more individuals and at and in the direction of a motor vehicle and was reckless as to
whether the said motor vehicle was occupied, thereby causing the death of James Beaty.



 At the conclusion of the guilt/innocence phase of the trial, the proposed jury charge
submitted all three modes of murder under section 19.02, as well as the offense of manslaughter. See Tex.
Penal Code Ann. § 19.04 (West 1994). (3) Appellant objected to the submission of felony murder because
the charge bootstrapped the offense of deadly conduct into felony murder, violating the merger doctrine
and the decision in Garrett v. State, 573 S.W.2d 543 (Tex. Crim. App. 1978). Appellant contended that
the felony murder rule has no application where the underlying felony sought to be used as the basis for the
operation of the rule is the very act which caused the homicide. The trial court overruled the objection and
submitted the charge authorizing the jury to first consider murder under section 19.02(b)(1), then murder
under section 19.02(b)(2), and then felony murder under section 19.02(b)(3). Lastly, the trial court
submitted the offense of manslaughter. There was also an abstract charge on section 6.04(b) (4) but it was
never applied to the facts and a conviction was not authorized on that theory.

 The jury found appellant guilty of felony murder. It is appellant's contention that the trial
court erred in charging on felony murder over timely objection and that any conviction resulting therefrom
cannot stand.


COMMON LAW

 At early common law, an individual was held liable for murder when he caused a death,
although unintentionally, while committing a felony. 4 William Blackstone, Commentaries 200 (1897). 
This concept is known as the felony murder rule. The first statement of the common law felony murder rule
has frequently been attributed to the seventeenth century pronouncement of Lord Coke: "If the act be
unlawful, it is murder." 3 Edward Coke, Institutes of the Laws of England (London 1797); see also
3 James Stephen, A History of the Criminal Laws of England 52-57 (1883); 2 Charles E. Torcia, 
Wharton's Criminal Law, Murder § 146, at 296 (15th ed. 1994); Phillip Zelikow, The Constitutionality
of Imposing the Death Penalty for Felony Murder, 15 Hous. L. Rev. 356, 364 (1978) (hereinafter
Zelikow). (5)

 The felony murder doctrine, as developed at common law, provided that where a death
occurs in the course of, or as a consequence of, the commission of another distinct felony, the felonious
intent involved in the underlying felony may be transferred to supply the intent to kill necessary to
characterize the death as murder. W. E. Shipley, Annotation, Judicial Abrogation of Felony murder
Doctrine, 13 A.L.R. 4th 1226, 1227 (1982). Few legal doctrines have been as maligned and yet have
shown as great a resilience as the felony murder rule. Roth & Sundby at 446. Perhaps as a result, the
"felony murder rule has been subject to many convoluted interpretations in the various jurisdictions . . ." 
Zelikow at 367.

 The early felony murder rule lacked significance since all felonies in England at the time
were punishable by death. See Wayne LaFave & Austin W. Scott, Handbook on Criminal Law § 71,
at 546 n.4 (West 1972) (hereinafter LaFave & Scott). If the intended act was a felony, its felonious
design was imputed to the act actually committed, if that act was a homicide, it became murder since it was
immaterial whether the offender was hanged for one felony or the other. See Jenkins v. State, 230 A.2d
262, 268 (Del. 1967); Commonwealth v. Redline, 137 A.2d 472, 476 (Pa. 1958); Powers v.
Commonwealth, 61 S.W.2d 735, 741 (Ky. 1901). Needless to say, the felony murder doctrine was
brought to the American colonies. After independence, the doctrine became a part of the common law or
statutory provisions of every American state. In most states, the felony murder statutory pattern continues
to this day to be grounded conceptually on the 1794 felony murder statute of Pennsylvania: "All murder
. . . which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery or
burglary shall be deemed murder in the first degree." (6) Generally speaking, the statutory provisions adopted
early on by the various states did not create new offenses but merely modified the common law rules with
regard to the intent of the defendant or the punishment to be imposed. See 40 Am. Jur. 2d, Homicide §
72 at 365 (1968). As the number of felonies multiplied so as to include a great number of relatively minor
offenses, many of which involved no great danger to life or limb, it became necessary, in order to alleviate
the harshness of the rule, to limit it in some fashion. LaFave & Scott, § 71 at 345-46. In England, the
courts came to limit the felony murder doctrine: (1) by requiring that the defendant's conduct in committing
the underlying felony involve an act of violence in carrying out a felony of violence, (7) or (2) by requiring that
the death be the natural and probable consequence of the defendant's conduct in committing the felony. (8) 
In 1957, the rule was abolished in the country of its origin. Homicide Act 1957, 5 & 6 Eliz. 2, ch. 11, §
1. (9)

 In the United States, limitations on the doctrine have varied from state to state and often
have depended on differently worded statutes. Some states limit the rule to certain enumerated felonies,
others to felonies that are inherently or foreseeably dangerous to human life, or where the homicide is a
natural consequence of the felonious act. Some states require that the underlying felony be malum in se
rather than malum prohibitum. Another limitation is that the underlying felony must be independent of the
homicide. See LaFave & Scott § 71, at 547-553; Roth & Sundby, 446-47 n.7; Aaron, 299 N.W.2d
at 312-17; 40 C. J. S. Homicide, § 417-19. This latter limitation has become known as the merger
doctrine, which was first adopted in State v. Shock, 68 Mo. 552 (1878) and primarily developed in New
York state courts commencing with People v. Hüter, 184 N.Y. 237, 77 N.E. 6 (1906); see also
Comment, Application of the Merger Doctrine to the Felony murder Rule in Texas: The Merger
Muddle, 42 Baylor L. Rev. 535 (1990); Note, Felony Murder in Texas: The Merger Problem, 33
Baylor L. Rev. 1035 (1981). It has been said that under this doctrine the felony murder rule will not apply
where the underlying felony sought to be used as a basis for the operation of the rule is an offense included
in fact in the homicide itself. See Richardson v. State, 823 S.W.2d 710, 714 (Tex. App.--San Antonio
1992, pet. ref'd). Where the merger doctrine is applied, the felony murder rule is not invoked unless the
slayer was engaged in some other felony so distinct as not to be an ingredient of the homicide itself. See
People v. Wilson, 462 P.2d 22, 28-30 (Cal. 1969).


TEXAS UNTIL 1974

 Our research reveals that early on Texas limited felony murder to certain enumerated
felonies but also permitted conviction on the theory of transferred intent. Article 1141 of the 1911 Penal
Code provided: "All murder committed by poison, starving, torture, or with express malice, or committed
in perpetration, or in the attempt at perpetration of arson, rape, robbery or burglary, is murder in the first
degree; and all murder not of the first degree is murder of the second degree." With the language
unchanged, this article was the successor to article 711 of 1895 Penal Code, to article 606 of the 1858
code, and to "Act of March 20, 1848, p. 219 (Hart. Dig. art. 501)." Willison's Penal Code and Code of
Criminal Procedure § 1032-34 at 203-04 (4th ed. 1888). The 1911 code provision was not brought
forward in the 1925 Penal Code or later codes. We do find that article 1325 of the 1925 Penal Code
provided that when death was occasioned by any offense in the chapters on arson or wilful burning, the
offender was guilty of murder. This article was later amended to provide that in the absence of malice
aforethought of the offender, the punishment shall be life imprisonment or any term of year not less than two
years. Act of May 6, 1965, 59th Leg., R.S., ch. 251, § 1, 1965 Tex. Gen. Laws 489.

 Article 42 of the 1925 Penal Code provided: "One intending to commit a felony and who
in the act of preparing for or executing the same shall through mistake or accident do another act which,
if voluntarily done, would be a felony, shall receive the punishment affixed to the felony actually committed." 
This provision was the successor unchanged from article 48 of both the 1911 and 1895 Penal Codes and
traceable at least to 1858.

 Kuykendall v. State, 609 S.W.2d 791 (Tex. Crim. App. 1980), touched on the history
of felony murder in Texas when affirming a murder conviction where the offense had occurred in the course
of and in furtherance of a robbery. The court stated:


As the theory of transferred intent was generally understood to apply to felony murder
cases under the former penal codes, whereas in the usual "regular" murder cases the trial
court ordinarily instructed the jury that they must find the accused intended to kill the
deceased, there are other kinds of cases in which it was not necessary to prove or charge
the jury touching on a specific intent to kill "further than is involved in the proof of certain
facts" such as a killing committed in the perpetration of arson, burglary or robbery, Lyons
v. State, 138 Tex. Cr. R. 375, 136 S.W.2d 835 (1940), or other felony pursuant to
Article 42, P.C. 1925; Smith v. State, 154 Tex. Cr. R. 234, 225 S.W.2d 846 (1949).



Kuykendall, 609 S.W.2d at 795-96. See generally George Wilfred Stumberg, Criminal Homicide in
Texas, 16 Tex. L. Rev. 305 (April 1938).

 Some of the earlier cases clearly support Kuykendall's historical recitation. In Miller v.
State, 13 S.W.2d 865, 867 (Tex. Crim. App. 1929), the court noted that a "voluntary killing simply means
an intended killing," but added:


There do exist cases, we think, in which it is not necessary to prove a specific intent to kill
any further than is involved in the proof of certain facts as the intentional infliction of serious
bodily injury upon the person of another by the use of a weapon, deadly per se, or a killing
committed in the attempted perpetration of arson, burglary, etc. In such cases we can see
no reason for giving the charge under discussion [intent to kill].



Id. at 867.


 Similarly in Whiteside v. State, 29 S.W.2d 399, 403 (Tex. Crim. App. 1930), the court
observed that a specific intent to kill is not in every case essential to support a conviction of murder and
added: "If death results under certain conditions the law regards it as murder aside from the intent."

 Salisbury v. State, 235 S.W. 901, 902 (Tex. Crim. App. 1921), observed that one who
shoots wantonly and recklessly into a car or building known to him to be occupied need not have the
specific intent to kill any particular person in order to make him guilty of murder. In Banks v. State, 211
S.W.2d 217 (Tex. Crim. App. 1919), the evidence showed that the defendant shot at a moving train killing
a brakeman whom he did not know. In fact, the defendant apparently knew no one on the train. Clearly
indicating that murder could exist even in the absence of a specific intent to kill, the court stated: "The
intentional doing of any wrongful act in such manner and under such circumstances as that the death of a
human being may result therefrom is malice." Id. at 217; see also Taylor v. State, 55 S.W. 961 (Tex.
Crim. App. 1900). Sargent v. State, 518 S.W.2d 807, 809 (Tex. Crim. App. (1975), involved a
conviction for murder with malice under the 1925 code where the court held that article 42 was a statute
which as a matter of law transfers intent from the crime contemplated to the one actually committed. The
court held that a defendant may not rely on the doing of an unintentional act as a defense when he in fact
intended to commit another felony.

 In Smith v. Texas, 329 F.2d 498 (5th Cir. 1964), a federal habeas corpus proceeding,
the court held that the killing of a boy by smothering and suffocation while preparing and executing sodomy
on the boy constituted murder with malice under the Texas Penal Code. The court's holding was based
on article 524 of the 1925 code, which made sodomy a felony, and the transferred intent provisions of then
article 42. See also Smith v. State, 350 S.W.2d 344, 346 (Tex. Crim. App.), cert denied, 368 U.S. 83
(1961); Johnson v. State, 336 S.W.2d 175, 179-80 (Tex. Crim. App.), cert denied, 364 U.S. 927
(1960). (10)




Hilliard v. State

 Hilliard v. State, 513 S.W.2d 28 (Tex. Crim. App. 1974), is a crucial case in
understanding the felony murder rule in Texas under articles 42 and 1256 (11) of the 1925 Penal Code, and
is important to our later discussion of the merger doctrine. The defendant in Hilliard was convicted of
murder with malice under the felony murder rule with the underlying felony offense being injury to a child
as provided then in article 1148a of the 1925 code. The Hilliard court first rejected the defendant's claim
that the submission of the felony murder issue to the jury was error because the provisions of article 42
were not alleged in the indictment. Hilliard, 513 S.W.2d at 31. It then held that article 42 did not
eliminate the gradation of homicide explaining that "it adds another manner of showing murder; that is,
murder committed while in the act of committing another felony." Id. at 32. The court noted that article
42 had been consistently construed to mean an accused is actually guilty of the offense committed during
the preparation or execution of another felony. Id. at 32-33. Acknowledging a transfer of intent was
involved, the court stated: "Thus, the intent to kill in the present case is supplied by the intent to commit the
felony which the appellant did intend to commit and was committing which caused the child's death." The
court rejected the defendant's claim that by charging on article 42 the trial court had deprived the jury of
its right to pass upon the necessary element of the intent to kill.

 Most importantly, Hilliard clearly demonstrated that the merger doctrine was not to be
applied in felony murder cases in Texas. Relying upon Crawford v. State, 511 S.W.2d 14 (Tex. Crim.
App. 1974), and Johnson, 336 S.W.2d at 175, the Hilliard court wrote:


 In each of Crawford and Johnson, supra, there was only the one felonious assault
on the victim; however, that assault through mistake or accident was the cause of the act
(killing the deceased) which, if voluntarily done would be a felony.


Hilliard, 513 S.W.2d at 33. The defendant clearly urged the adoption of the merger doctrine, but it was
flatly rejected by Hilliard. (12)


1974 PENAL CODE AND CASE LAW

 The 1974 Penal Code definitely made changes in statutes relating to murder in Texas.
Section 19.02, a unique statute, simplified the definition of first degree murder by eliminating the concept
of malice. Three separate and distinct statutory modes or ways of committing the offense were established. 
Then section 19.02(a)(1) used two carefully defined terms, "intentional" and "knowing," to describe the
culpable mental state necessary under that subsection. (13) Although section 6.01 of the 1974 code provided
that a person commits an offense only if his conduct is voluntary, the term is subsumed in the terms of
"intentional" and "knowing." See Texas Anno. Penal Statutes, Branch's 3d ed. § 19.02 at 12 (1974).

 The second mode of first degree murder, under section 19.02(a)(2), applied to an
unintended killing when there is an intent to cause serious bodily injury plus the commission of an act clearly
dangerous to human life that causes death. See 18 Tex. Jur. 3d, Criminal Law § 195, at 272 (1982). A
specific intent to kill was not an essential element of murder under this mode. See Garcia v. State, 541
S.W.2d 428, 430 (Tex. Crim. App. 1976); Baldwin v. State, 538 S.W.2d 615, 616 (Tex. Crim. App.
1976) (both overruled to the extent of conflict on other grounds); Flanagan v. State, 675 S.W.2d
734, 737 (Tex. Crim. App. 1984). A killing under this subsection was murder notwithstanding that no
murder was intended. Dovalina v. State, 564 S.W.2d 378, 385-86 (Tex. Crim. App. 1978).

 The third mode of committing first degree murder was found in section 19.02(a)(3), which
codified the felony murder doctrine in a different manner than the earlier codes. The 1973 Practice
Commentary to section 19.02 stated in pertinent part:


 Although it may contract the scope of the Article 42 felony murder doctrine, the
chief aim of Section 19.02(a)(3) is clarification. Under it the mere attempt or commission
of a felony no longer suffices to construct intent or knowledge: the actor must kill while
attempting or committing an act clearly dangerous to human life in the course of furtherance
of the felony or in immediate flight therefrom. As most felony murder prosecutions today
involve killings committed while the felon is engaged in highly dangerous conduct, however,
Section 19.02(a)(3)'s restatement of the doctrine will probably effect little change in
practice.



The legislature restricted the felony murder doctrine under this subsection to the commission or attempt to
commit any felony (other than voluntary and involuntary manslaughter) but only when in the course of and
in the furtherance of the commission or attempt to commit an act clearly dangerous to human life is
committed that causes the death of an individual.

 The legislature saw fit to expressly exempt only the offenses of voluntary and involuntary
manslaughter from the application of section 19.02(a)(3). This is because, as voluntary manslaughter, it
would be futile to recognize sudden passion arising from an adequate cause as sufficiently mitigating to
reduce a voluntary killing to voluntary manslaughter under section 19.04 of the 1974 Penal Code, (14) if in
the next breath voluntary manslaughter may become first degree murder by virtue of section 19.03(a)(3)
of the 1974 Penal Code.

 It would seem clear that section 19.02(a)(3) was to replace, at least in the first part, the
felony murder aspect of the former code. It was a separate mode of first degree murder, a distinct crime
for which the killing did not have a separate mens rea element apart from the felony. No transferred intent
was required. It was this change in the law of felony murder that has caused some confusion. (15)

 One of the first cases to come to grips with the third mode of murder under section 19.02
of the 1974 code was Rodriguez v. State, 548 S.W.2d 26 (Tex. Crim. App. 1977). The court observed
that section 19.02(a)(3) was silent as to, and plainly did not dispense with, the culpable mental state
required for the underlying felony committed or attempted, but held that the culpable mental state shall be
one of intent, knowledge, or recklessness as required by section 6.02 (16) then in effect under such
circumstances. Rodriguez, 548 S.W.2d at 28. The court then added:


Thus, the culpable mental state for the act of murder is supplied by the mental state
accompanying the underlying committed or attempted felony giving rise to the act. The
transference of the mental element establishing criminal responsibility for the original act to
the resulting act conforms to and preserves the traditional mens rea requirement of criminal
law. See, e.g., Hilliard v. State, 513 S.W.2d 28 (Tex. Crim. App. 1974).



Rodriguez, 548 S.W.2d at 28-29. The court then rejected the defendant's claim that section 19.02(a)(3)
was unconstitutional for its failure to specify the culpable mental state required for the act of murder. Id.
at 29.

 In response to the defense claim that the underlying felony, carrying a handgun on certain
premises licensed by the State for the sale of alcoholic beverages, was not a felony involving intentional
violence, the court stated:


Suffice it to state, without an academic discussion of the views of courts of other states as
presented in the briefs, that the legislature has seen fit to exempt only the felonies of
voluntary and involuntary manslaughter, and we will not add to the statutory exemption. 
The first ground is overruled.



Id. at 29. The court in effect recognized the lawmaking authority of the legislature, which includes the right
to define crimes and fix penalties. Tex. Const. art. III, § 1.

 Now, we enter the area of troublesome cases decided under the 1974 code. While
Rodriguez declined to "add to the statutory exemption," that is exactly what the court did in Garrett v.
State, 573 S.W.2d 543 (Tex. Crim. App. 1978), upon which appellant relies. Garrett dismissed the
statement regarding limited statutory exemptions in Rodriguez as merely restating the terms of the statute
and concluded that the statute had to be construed in the light of common sense and to promote the
objectives of the code. Garrett, 573 S.W.2d at 546 n.6. No claim was made in the opinion that the
statutory language was ambiguous requiring construction. The Garrett opinion, for the first time, engaged
in a wholesale adoption of the merger doctrine as a limitation on the felony murder rule in Texas. It
concluded that the underlying felony, aggravated assault, and the act in the homicide were one and the
same, an indivisible transaction, and the murder conviction under section 19.02(a)(3) could not stand. 
"There must be a showing of felonious criminal conduct other than the assaults causing the homicide." 
Garrett, 573 S.W.2d at 546. No mention was made of the fact that the merger doctrine had been
expressly rejected by Hilliard, a decision under the former code, nor was there any discussion on why the
merger doctrine was the only limitation upon felony murder within the realm of common sense or the
objectives of the code. The Garrett court based its "judicial adoption" in 1978 on People v. Moran, 246
N.Y. 100, 158 N.E. 35 (1927), although it acknowledged that Moran was based on New York statutes
and case law then in effect. Garrett, 573 S.W.2d at 545 n.4. (17)

 Recognizing its intrusion on legislative turf, the court did retrench by holding that the
statutory exemption of the voluntary manslaughter offense from a section 19.02(a)(3) prosecution included
a prohibition against using "offenses statutorily includable in voluntary manslaughter." Id. at 546. 
Undoubtedly, the court was referring to article 37.09 of the Code of Criminal Procedure, though it was not
cited. See Tex. Code Crim. Proc. Ann. art. 37.09 (West 1981). Of course, any lesser included offense
would have to be a felony. Judge Teague was later to observe that Garrett had erroneously held any
lesser included offenses of voluntary manslaughter were excluded by the statute from being underlying
offenses. He noted that the statute did not so state, that the legislature could have easily said so but did not,
and that it was not the function of the Garrett court "to act legislatively." Aguirre v. State, 732 S.W.2d
320, 329-30 (Tex. Crim. App. 1987) (Teague, J., dissenting op. on reh'g).

 If the merger doctrine in Texas seemed settled after Garrett, it was only a mirage. Almost
four years later, Ex parte Easter, 615 S.W.2d 719, 721 (Tex. Crim. App.), cert. denied, 454 U.S. 943
(1981), held that not every "assaultive" offense, if alleged as an underlying felony, will merge with the
homicide in a felony murder indictment under section 19.02(a)(3), noting that "the language carefully chosen
in Garrett should not be given an overly broad meaning." Easter was a post-conviction proceeding
wherein the petitioner challenged his felony murder conviction based on the underlying felony of injury to
a child which had resulted in death. Petitioner relied upon Garrett because injury to a child was an
assaultive offense. The Easter court disagreed, noting that this contention had been rejected in Hilliard
when presented under the 1925 Penal Code and that there had been "little change in practice" since. The
court further stated that the felony murder rule in the 1974 Penal Code dispensed with the inquiry into the
mens rea accompanying the homicide itself, and that the underlying felony--injury to a child--supplied the
necessary culpable mental state. Garrett was further distinguished by holding that the offense of injury to
a child was not a lesser included offense of murder. (18)

 Easter and Garrett were obviously at odds, and later cases have only stirred the muddy
waters rather than applying a clearing agent. One commentator has noted:


 Texas courts have resisted expansion of the merger doctrine limitation. One
rationale is that the merger doctrine does not prevent the use of an assaultive offense that
is not a lesser included offense of murder. The merger doctrine simply cannot be read on
a broader basis than the holdings that have allowed it.



6 Michael Charlton, Texas Criminal Law, § 10.02 at 102 (Texas Practice 1994).

 In Berghahn v. State, 696 S.W.2d 943 (Tex. App.--Fort Worth 1985, pet. ref'd), where
the underlying felony was injury to a child, the court struggled mightily with the conflict between Garrett
and Easter. It concluded that Easter was controlling as to whether the felony offense of injury to a child
could be used as an underlying offense "notwithstanding other opinions to the contrary." It took "refuge
in the logic and reasoning" of Rodriguez, 548 S.W.2d at 29, that the legislature had seen fit to exempt only
the felonies of voluntary and involuntary manslaughter from the felony murder rule "and we will not add to
that statutory exemption." Berghahn, 696 S.W.2d at 949; see also Holley v. State, 713 S.W.2d 381,
385 (Tex. App.--Amarillo 1986), rev'd on other grounds, 766 S.W.2d 254 (Tex. Crim. App. 1989). 
In Wray v. State, 642 S.W.2d 27, 29 (Tex. App.--Texarkana 1982), rev'd on other grounds, 711
S.W.2d 631 (Tex. Crim. App. 1986), the underlying felony was aggravated assault as in Garrett. Wray
distinguished Garrett on the basis that the underlying aggravated assault in the felony murder prosecution
was alleged to have been committed on one person while the intended victim was another person.

 In Aguirre, the defendant fired a shotgun at the door of his ex-wife's house when she
refused to speak to him. One of the couple's children was standing behind the door and was killed. On
original submission, the Court of Criminal Appeals, relying on the merger doctrine announced in Garrett,
reversed the conviction. On rehearing, the court changed its mind and held the merger doctrine inapplicable
because the underlying felonious conduct, criminal mischief by attempting to blow open the door with a
shotgun, was a property offense and the child was killed in the furtherance of the property offense. 732
S.W.2d at 325. The court distinguished Garrett because the act of criminal mischief and the resulting
homicide were not one and the same. Id.

 Another example of a felony murder case where the merger doctrine presented no bar to
conviction was Murphy v. State, 665 S.W.2d 116 (Tex. Crim. App. 1983), cert denied, 469 U.S. 821
(1984). There, the defendant was engaged in felonious conduct, arson, at the time the deceased was killed. 
Thus, there was a showing of felonious criminal conduct which was not the same as the resulting homicide
of the victim. The defendant set fire to a house in order to destroy it and collect insurance money, a
property offense, and in the furtherance of that offense, the deceased was killed. Id. at 119. Thus, Garrett
was distinguished.

 In Richardson v. State, 823 S.W.2d 710, 715 (Tex. App.--San Antonio 1992, pet.
ref'd), the defendant was engaged in the felonious criminal conduct of unauthorized use of a motor vehicle,
and during and in the furtherance of that offense, a person was killed. The court held that the underlying
theft-type offense was a property offense and was not an integral part of or included in the homicide, so
that the merger doctrine as explained in Garrett did not bar the conviction.

 Minard v. State, 836 S.W.2d 287 (Tex. App.--Dallas 1992, no pet.), held that the
murder conviction of the defendant, who killed the victim during the course of an aggravated robbery
offense, was not barred by the merger doctrine as announced in Garrett. The court held that while
aggravated robbery is "assaultive" in nature, it is also a property offense that occurs in the course of
committing theft; that the defendant's act of felony theft and the act that resulted in the victim's death were
not one and the same; and thus there was a showing of felonious criminal conduct other than the discharge
of the weapon that caused the victim's death. Minard, 836 S.W.2d at 290-91.


Summary of 1974 Penal Code Cases

 In summary, the felony murder rule in Texas has prevailed in Texas for many years. Any
limitation of the rule took forms other than the merger doctrine. Felony murder as it existed under prior
penal codes was discussed in Kuykendall v. State, 609 S.W.2d 791, 795-96 (Tex. Crim. App. 1990). 
As late as 1974, the merger doctrine was expressly rejected in Hilliard, a case decided under the 1925
Penal Code. After the advent of the 1974 Penal Code, Garrett adopted the merger doctrine despite the
wording of section 19.02(a)(3). Ex parte Easter contended that Garrett should not be read too broadly
and that not every assaultive offensive merged with the alleged homicide. Since then, in case after case,
the courts have so chipped away and undermined the Garrett decision that its continued viability is highly
questionable. Moreover, the legislature has now enacted the 1994 Penal Code, which controls the instant
case.


FELONY MURDER UNDER THE 1994 PENAL CODE

 The legislature is invested with the law-making power of the people and may define crimes
and fix penalties. Tex. Const. art. III, § 1; Willis v. State, 790 S.W.2d 307, 314 (Tex. Crim. App. 1990);
McNew v. State, 608 S.W.2d 166, 176 (Tex. Crim. App. 1980) (op. on reh'g); State ex rel Smith v.
Blackwell, 500 S.W.2d 97, 104 (Tex. Crim. App. 1973). A power which has been granted to one
department of government by the state constitution may be exercised only by that branch to the exclusion
of others. Any attempt by one department to interfere with the powers of another is null and void. 
Blackwell, 500 S.W.2d at 101; see also Shields v. State, 809 S.W.2d 230, 233 (Tex. Crim. App. 1991);
Ex parte Giles, 502 S.W.2d 774, 780 (Tex. Crim. App. 1973).

 "It is the duty of the court to administer the law as it is written, and not to make law; and
however harsh a statute may seem to be, or whatever may seem to be its omission, courts cannot . . . make
it apply to cases to which it does not apply, without assuming functions that pertain to the legislative
department of the government." Turner v. Cross, 18 S.W. 578, 579 (1892). The legislature is
constitutionally entitled to expect that the judiciary will faithfully follow the specific text that was adopted. 
Boykin v. State, 818 S.W.2d 782, 785, (Tex. Crim. App. 1991).

 In divining legislative intent, we look first to the language of the statute. When the meaning
is plain, we look no further. State v. Daughtery, 931 S.W.2d 268, 270 (Tex. Crim. App. 1960);
Dowthitt v. State, 931 S.W.2d 244, 258 (Tex. Crim. App. 1966); Boykin, 818 S.W.2d at 785. We
focus on the text of the statute and interpret it in a literal manner to discern a fair, objective meaning of the
text. State v. Mancuso, 919 S.W.2d 86, 87 (Tex. Crim. App. 1986). When a court interprets a statute,
it is "obliged to implement the expressed will of our legislature, not the will it keeps to itself." Johnson v.
State, 939 S.W.2d 586, 587 (Tex. Crim. App. 1996) (quoting Garcia v. State, 829 S.W.2d 796, 799
(Tex. Crim. App. 1992)). If the meaning of the statutory text, when read using the established canons of
statutory construction relating to such text, should have been plain to the legislators who voted on it, courts
will ordinarily give effect to that plain meaning. Smith v. State, 789 S.W.2d 590, 592 (Tex. Crim. App.
1990); see also Tex. Gov't Code Ann. § 311.011(a) (West 1988). "Where the statute is clear and
unambiguous, the Legislature must be understood to mean what it has expressed and it is not for the courts
to add to or subtract from such statute." Coit v. State, 808 S.W.2d 473, 475 (Tex. Crim. App. 1991)
(quoting from Davis v. State, 412 S.W.2d 46, 52 (Tex. Crim. App. 1967) (op. on reh'g)).

 There is, of course, a legitimate exception to this plain meaning rule: where application of
the rule would lead to absurd consequences that the legislature could not possibly have intended, courts
should not apply the language literally. Boykin v. State, 818 S.W.2d 783, 785 (Tex. Crim. App. 1991);
Faulk v. State, 608 S.W.2d 625, 630 (Tex. Crim. App. 1980). There is no basis for the application of
this exception to section 19.02(b). The language of section 19.02(b) is clear and the meaning plain. The
legislature created three modes of first degree felony murder, each a separate and distinct offense. A
conviction under section 19.02(b)(3) may stand alone. It may be a valid conviction without the need to
be tied to section 19.02(b)(1) or section 6.04 of the 1994 Penal Code in order to convert it into an intent-to-kill murder by the transferred intent doctrine.


 The courts sometimes explain felony murder by stating that the felon's intent to
commit the [underlying] felony supplies the intent to kill, so that the felon intended to kill,
resulting in a plain case of intent-to-kill murder. [citations omitted] This sort of talk is pure
fiction and it is better to recognize felony murder as a category of murder separate from
intent-to-kill murder.



LaFave & Scott, § 71, at 545 n.2.


 The more recent trend has been to abandon the fiction of implied malice [intent to
kill]. Generally, modern law no longer resorts to the convention of finding that the
perpetrator implicitly intended to harm the victim in all cases of murder. Most statutes and
courts now frankly characterize a homicide as murder if the killer acted with reckless and
wanton disregard of an obvious risk to human life.



Eugene R. Milhizer, Murder Without Intent: Depraved-Heart Murder Under Military Law, 133
Military L. Rev. 205, 209 (1991).

 This is exactly what our legislature did in enacting the third mode of first degree murder in
section 19.02(b)(3). In doing so it designed its own unique statute exempting only manslaughter as a
predicate or underlying felony. If it had intended to exempt other felony offenses or lesser included felony
offenses or to embrace the merger doctrine as a limitation on felony murder, it could easily have done so. 
The maxim expresio unius est exclusio alterius is often employed in the construction of statutes. In
general, it means that a statute's inclusion of a specific limitation excludes all other limitations of that type. 
Guinn v. State, 696 S.W.2d 436, 438 (Tex. App.--Houston [14th Dist.] 1985, pet. ref'd); see also 67
Tex. Jur. 3d, Statutes § 119 (1989). As applied to the instant case, it means that inclusion of the limitation
as to manslaughter excludes all other limitations.

 Our legislature within its constitutional role remains free to abolish felony murder or limit
its application or effect to other felonies. It is not the role of courts to abolish or judicially limit or expand
a constitutionally valid statutory offense clearly defined by the legislature.

 We are aware of the rule of statutory construction that when the legislature meets, after a
particular statute has been judicially construed, without changing the statute, it is presumed that the
legislature intended the same construction to be applied to that statute. See Marin v. State, 891 S.W.2d
267, 271-72 (Tex. Crim. App. 1994). Because the decision in Garrett upon which the above rule must
depend did not itself heed the rule, and because the Garrett decision has been constantly eroded so that
there is no consistent judicial interpretation, we find no basis for the presumption so essential to the rule. 
The rule is not here applicable to a construction of section 19.02(b)(3).

 The legislature has not expressly adopted the merger doctrine or implicitly approved of the
Garrett decision. Appellant's conviction for felony murder under section 19.02(b)(3) with the underlying
felony being deadly conduct (section 22.05) by repeatedly shooting a firearm into an automobile known
to be occupied, an act clearly dangerous to human life, was proper. The trial court did not err in overruling
the objection to the jury charge based on Garrett and the merger doctrine. The sole point of error is
overruled.

 The judgment is affirmed.



 John F. Onion, Jr., Justice

Before Justices Powers, Kidd and Onion *

Affirmed

Filed: July 3, 1997

Publish




* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   Section 19.02(b) was section 19.02(a) under the 1974 Penal Code. Act of May 29, 1973, 63d
Leg., R.S., ch. 399, sec. 1, § 19.02, 1973 Tex. Gen. Laws 883, 913. The reader should keep this in mind
while reading this opinion.
2.   The 1993 amendments to the statute changed the section's name from "Reckless Conduct" to
"Deadly Conduct" and added subsection (b) as a new offense with former subsection (b) becoming
subsection (c). Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586,
3623-24. It was new subsection (b) that was utilized in drafting the felony murder paragraph of the instant
indictment.
3. Section 19.04 provides: "(a) A person commits an offense if he recklessly causes the death of an
individual. (b) An offense under this section is a felony of the second degree." By the 1993 amendments,
this section was renumbered from section 19.05 and former section 19.04 relating to voluntary
manslaughter was deleted. Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws
3586, 3614.
4. Tex. Penal Code Ann. § 6.04(b) (West 1994).
5. People v. Aaron, 299 N.W.2d 304 (Mich. 1980) has traced the history of the felony murder
doctrine in great detail, attributing the origin of the rule to cases decided before Lord Coke's
pronouncement. Id. at 307-12. The origin of the doctrine will undoubtedly remain in dispute. See Nelson
E. Roth & Scott E. Sundby, The Felony murder Rule; A Doctrine at Constitutional Crossroads, 70
Cornell L. Rev. 446, 447 n. 7 (1985) (hereinafter Roth & Sundby).
6. See generally Keedy, History of the Pennsylvania Statute Creating Degrees of Murder, 97 U.
Pa. L. Rev. 759 (1949).
7. See Regina v. Serne, 16 Cox Crim. Cas. 311 (1887).
8. See Regina v. Horsey, 176 Eng. Rep. 129 (Assiz 1862).
9. It appears the felony murder rule also has been abolished in the states of Hawaii, Kentucky, and Ohio. 
People v. Aaron, 299 N.W.2d 304, 312 (Mich. 1980).
10. Lopez v. State, 482 S.W.2d 179 (Tex. Crim. App. 1972), involved another murder conviction
upheld under article 42, holding that where two individuals agree to commit robbery with a deadly weapon
and the victim is killed in the course of the robbery or the attempt, both are guilty of murder with malice. 
Id. at 182.
11. Article 1256 provided: "Whoever shall voluntarily kill any person within this State shall be guilty of
murder. Murder shall be distinguished from every other species of homicide by the absence of
circumstances which reduce the offense to negligent homicide or which excuse or justify the killing." Act
of 1927, 40th Leg., R.S., ch. 274, § 1, 1927 Tex. Gen. Laws 412, 413. A voluntary killing meant an
intentional killing. Baylor v. State, S.W.2d 558, 560 (Tex. Crim. App. 1948).
12. State v. Wanrow, 588 P.2d 1320, 1323 (Wash. 1978) recognized that Hilliard had declined to
adopt the merger doctrine in Texas. Wanrow concluded that the merger doctrine was not necessary to
make sense of the Washington state statutory scheme relating to felony murder.
13. See Tex. Penal Code Ann. § 6.03 (West 1994). The current code is cited for convenience as it is
unchanged from the former code.
14. See Act of May 29, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883. In 1994, the
offense of voluntary manslaughter was eliminated. It is no longer defined as a separate offense. Instead,
it is a defensive issue which may be raised at the penalty stage of a murder trial. See Tex. Penal Code Ann.
§ 19.02(a)(1), (2) & (d) (West 1994).
15. Section 6.04 of the 1974 Penal Code retained the transferred intent of former article 42 from which
it was derived. See Honea v. State, 585 S.W.2d 681, 684-5 (Tex. Crim. App. 1979); Salazar v. State,
642 S.W.2d 535, 536 (Tex. App.--Houston [14th Dist.] 1982, no pet.); see also Price v. State, 861,
S.W.2d 913, 916 n.8 (Tex. Crim. App. 1993) (Clinton, J., dissenting); Section 6.04(b) provided:


(b) A person is nevertheless responsible for causing a result if the only difference between
what actually occurred and what he desired, contemplated, or risked is that:


 (1) a different offense was committed, or


 (2) a different person or property was injured, harmed, or otherwise affected.


Act of May 29, 1973, 63d Leg., R.S., ch. 399, § 1, Tex. Gen. Laws 883, 893.


         It is observed that section 6.04(b)(1) did not require that the predicate offense be a felony, whereas
former article 42 did. Moreover, former article 42 contained aspects of punishment but section 6.04 did
not. Section 6.04 was a general statute while section 19.03(a)(3) was a specific statute, an offense within
itself.


         There are cases holding that section 6.04 could be used to establish a section 19.02(a)(1) (intentional
or knowing) murder in much the same manner as under the 1925 code. See Norris v. State, 902 S.W.2d
428, 438 (Tex. Crim. App.), cert denied, 116 S. Ct. 237 (1995); Dowden v. State, 758 S.W.2d 264,
274 (Tex. Crim. App. 1988); McNeal v. State, 600 S.W.2d 807, 808 (Tex. Crim. App. 1980); Williams
v. State, 567 S.W.2d 507, 508-09 (Tex. Crim. App. 1978). Thus, felony murder was not limited to the
third mode of first degree murder under section 19.02(a)(3).
16. Tex. Penal Code Ann. § 6.02 (West 1993). The current code is cited for convenience. It is
unchanged from the former law, except for the deletion of the phrase "of this section."
17. In a footnote the court did mention other authorities including 40 A.L.R.2d 1341 (1971) supporting
the merger doctrine. Garrett, 573 S.W.2d at 545 n.3.
18. In his dissenting opinion in Aguirre, 732 S.W.2d at 327, Judge Teague argued that Easter was a
post-conviction proceeding which held that the sufficiency of the evidence could not be collaterally attacked
and that the indictment was not fundamentally defective, and aside from these two expressed holdings
anything else stated was dicta and not binding precedent.


9. It appears the felony murder rule also has been abolished in the states of Hawaii, Kentucky, and Ohio. 
People v. Aaron, 299 N.W.2d 304, 312 (Mich. 1980).
10. Lopez v. State, 482 S.W.2d 179 (Tex. Crim. App. 1972), involved another murder conviction
upheld under article 42, holding that where two individuals agree to commit robbery with a deadly weapon
and the victim is killed in the course of the robbery or the attempt, both are guilty of murder with malice. 
Id. at 182.
11. Article 1256 provided: "Whoever shall voluntarily kill any person within this State shall be guilty of
murder. Murder shall be distinguished from every other species of homicide by the absence of
circumstances which reduce the offense to negligent homicide or which excuse or justify the killing." Act
of 1927, 40th Leg., R.S., ch. 274, § 1, 1927 Tex. Gen. Laws 412, 413. A voluntary killing meant an
intentional killing. Baylor v. State, S.W.2d 558, 560 (Tex. Crim. App. 1948).
12. State v. Wanrow, 588 P.2d 1320, 1323 (Wash. 1978) recognized that Hilliard had declined to
adopt the merger doctrine in Texas. Wanrow concluded that the merger doctrine was not necessary to
make sense of the Washington state statutory scheme relating to felony murder.
13. See Tex. Penal Code Ann. § 6.03 (West 1994). The current code is cited for convenience as it is
unchanged from the former code.
14. See Act of May 29, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883. In 1994, the
offense of voluntary manslaughter was eliminated. It is no longer defined as a separate offense. Instead,
it is a defensive issue which may be raised at the penalty stage of a murder trial. See Tex. Penal Code Ann.
§ 19.02(a)(1), (2) & (d) (West 1994).
15. Section 6.04 of the 1974 Penal Code retained the transferred intent of former article 42 from which
it was derived. See Honea v. State, 585 S.W.2d 681, 684-5 (Tex. Crim. App. 1979); Salazar v. State,
642 S.W.2d 535, 536 (Te