Raymond MEDELLIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–96–0233–CR.

Court of Appeals of Texas,
Amarillo.

Dec. 18, 1997.

■

Hurley, Sowder & Reyes, Daniel W. Hurley, Lubbock, for appellant.

Lisa Tanner, Assistant Attorney General, Assistant District Attorney, Pro Tem., Austin, for appellee.

Before BOYD, C.J., and DODSON and QUINN, JJ.

BOYD, Chief Justice.

In two points of error, appellant Raymond Medellin challenges his conviction of murder and the resulting sentence of 32 years confinement in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 fine. In his points, appellant argues the trial court erred in 1) submitting a jury charge which allowed the jury to find appellant guilty of felony murder, yet failed to allege a felonious act not prohibited under the merger doctrine; and 2) allowing the State to introduce evidence of appellant's

character without giving a requested limiting instruction at the time the evidence was introduced. Disagreeing with appellant's arguments, we affirm the conviction.

Even though appellant does not raise sufficiency of evidence questions, a brief recitation of the underlying facts is helpful in discussing the questions before us. On the day in question, Jesus Garcia, Jr., an Odessa resident, was visiting his father in Lubbock. About 9:30 p.m., Garcia, his girlfriend, his father, and his father's common law wife, Patricia Perez, were in a back bedroom of the house. Garcia's stepbrother, Gabriel Perez, together with his girlfriend Felicita Guerra, were in a front bedroom doing homework. Patricia Perez's seven-year-old son was asleep in the living room. At that time, a truck driven by Theodore Cristan, in which appellant was a passenger, drove by the house and the occupants of the truck yelled to Gabriel Perez, nicknamed "Myagi," that he was "marked." As they did so, Gabriel Perez and Jesus Garcia, Jr. opened the door and stood in the doorway. The truck then drove around the block, drove back by, and as it did so, one or more of the occupants yelled out "Eastside and Eastside Trece," and, according to the jury verdict, appellant fired six .38 caliber shots at the residence. All of the bullets struck the home and one hit Jesus Garcia, Jr. in the temple, causing his death. After the shooting, the truck sped away.

Appellant was charged with murder in a three count indictment. In the first count, appellant was charged with the murder of Jesus Garcia, Jr. pursuant to § 19.02(b)(2).[1] In the second count, appellant was charged with murder pursuant to § 19.02(b)(3)[2] with deadly conduct as the underlying felony. In the third count, again pursuant to § 19.02(b)(3), appellant was charged with murder with aggravated assault of a third

party as the underlying felony. Appellant unsuccessfully moved to sever the offenses; however, at the conclusion of the guilt or innocence trial, the State waived the third count of the indictment. In its jury charge, and in addition to its instructions on the offense of murder, the trial court included instructions on the lesser-included offenses of manslaughter, deadly conduct, and criminally negligent homicide. The murder verdict form submitted with the charge did not allow the jury to distinguish under which count of the indictment they found appellant guilty.

In mounting his first point challenge, appellant primarily relies upon the reasoning applied by the court in *Garrett v. State,* 573 S.W.2d 543 (Tex.Crim.App.1978). In that case, the court held that an aggravated assault could not be used as the underlying felony when a person is charged under § 19.02(b)(3).[3] *Id.* at 546. The court's expressed rationale for this statutory interpretation was that an assault which results in death was the same act used to boost the homicide into the murder category. *Id.* at 545. Thus, it reasoned, if the lesser-included assaultive offense was used as the underlying felony, the State was impermissibly relieved of the burden of proving the actual homicide was committed intentionally or knowingly. *Id.*

Relying on the *Garrett* rationale, appellant posits that applying the felony murder rule in situations where the assaultive act giving rise to the felony and the act resulting in homicide are the same, the two acts are inseparable. Hence, in these situations, the underlying felony is said to merge into the homicide, *i.e.,* the "merger rule." Thus, he concludes, the underlying conduct necessary to the application of § 19.02(b)(3) must be something other than the conduct which caused the homicide. Otherwise, he reasons,

---

**1.** In our discussion, all later references to section numbers are to those sections of the Texas Penal Code (Vernon 1994 & Vernon Supp.1997), unless otherwise specifically indicated.

**2.** Section 19.02(b)(3) provides that a person commits an offense if he "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or at-

tempts to commit an act clearly dangerous to human life that causes the death of an individual."

**3.** In *Garrett,* the challenge was actually directed at § 19.02(a)(3), which has since become § 19.02(b)(3). In order to simplify our discussion with regard to the *Garrett* decision, we will refer only to § 19.02(b)(3).

as did the *Garrett* court, the State is relieved of its required burden of showing the defendant's intent to commit the homicide.

■ Specifically, in the case before us, appellant contends that when the underlying felony is deadly conduct, an assaultive offense, the "merger rule" is applicable, making the § 19.02(b)(3) charge improper. Additionally, appellant contends the trial court erred because the jury verdict form did not allow the jury to specify whether it found appellant guilty under the first count or the second "invalid § 19.02(b)(3) count," and the "conviction must be reversed and the indictment dismissed." We disagree.

The recent case of *Rodriguez v. State,* 953 S.W.2d 342 (Tex.App.—Austin 1997, n.w.h.), involved a § 19.02(b)(3) murder charge and conviction in which the underlying conduct, like this one, was deadly conduct. The question presented to that court, and the one presented here, is analogous. In a well-reasoned opinion, the *Rodriguez* court recounted an exhaustive study of the history and development of the felony murder rule, including the period when a "transferred intent" rule was necessary and applied, and the apparent limitation of the felony murder rule under the "merger doctrine" as expressed in the *Garrett* decision. *Id.* at 345–52.

After doing so, the court came to the conclusion that in cases such as this one, the rationale of the *Garrett* court was no longer viable and held such prosecutions are governed by the express language of the present Penal Code. *Id.* at 354. To recount here that lengthy historical recitation and the reasoning leading to that holding would unnecessarily lengthen this opinion and we will not do so. *See* Tex.R.App. P. 47.1. Suffice it to say, we approve and adopt the *Rodriguez* court's reasoning and holding.

■ We agree, and hold, that the language of § 19.02(b) is clear and the meaning plain. Under that statute, the legislature created three modes of first degree felony murder, with each mode being a separate and distinct offense complete in itself. Thus, a conviction under § 19.02(b)(3) may stand alone without being tied to another offense in order to convert it to an intent-to-kill murder by virtue of transferred intent. That being so, the "merger rule" is not applicable to this prosecution and appellant's first point challenge must be, and is, overruled.

In his second point, appellant complains that when evidence indicating appellant's gang affiliation was admitted, he was entitled to a limiting instruction at the time the evidence was received, and the trial court's failure to do so was not remedied by including such an instruction in the jury charge. In response, the State argues that the evidence was admittable under the "same transaction contextual evidence" rule and, under that theory, appellant was not entitled to a limiting instruction. Those markedly different contentions require us to study not only the specific evidence challenged but also the surrounding circumstances.

Appellant complains about several pieces of evidence that were admitted at trial about his membership in a gang. First of all, appellant challenges the testimony regarding the second time the truck was driven by the residence when the shots were fired, and one or more of the occupants yelled out the words "East Side" and "East Side Trece (Spanish for thirteen)." Secondly, he also challenges testimony that at the time, Gabriel was a member of the North Side Lobos, another gang. Parenthetically, Martin Rodriquez and Domingo Olguin, two of the truck's occupants, testified that appellant was the one who did the yelling, while appellant and Gabriel Tovar, two other occupants of the truck, averred that appellant was not the one doing so. Thirdly, appellant questions the admission of testimony that the East Side Trece gang's locale is the east side of Lubbock and there is a gang rivalry between the two, together with testimony that the location of the shooting was in territory claimed by the East Side Trece. Finally, he contests the admission of a portion of a written statement in which he says "I claim Eastside 13 (Trece)," an admission he was a member of that gang.

■ In support of his proposition that reversible error is shown, appellant argues that the testimony is, in its essence, character evidence. It is the rule that once the State tenders the type of evidence to which the

defendant objects under Texas Rules of Criminal Evidence 401, 402, 403, and 404(b), the court must first determine whether the evidence is relevant. If it makes that determination, the court must then decide whether the evidence should be admitted or whether another constitutional, statutory, or evidentiary provision prevents its admission. Finally, even if it is relevant and otherwise admissible, the court must determine whether the prejudicial value of the evidence substantially outweighs its probative value. *Montgomery v. State,* 810 S.W.2d 372 (Tex. Crim.App.1990).

We begin with the proposition that when a party introduces evidence for a purpose other than character conformity, or any of the other enumerated purposes in Rule 404(b), to be admissible, such evidence must be relevant to a fact of consequence. A fact of consequence includes either an elemental fact or an evidentiary fact from which an elemental fact can be inferred. *Rankin v. State,* 0374–94, 1996 WL 165014, —— S.W.2d —— (Tex.Crim.App.1996) at p. 2, at ——. If the evidence is determined to be admissible for one of the Rule 404(b) purposes, and a limiting instruction is requested, the court must instruct the jury at the time the evidence is received as to the purpose for which the evidence is received and the failure to do so requires reversal. *Id.* at p. 5, at ——.

Neither party disputes the fact that a limiting instruction was not given by the court at the time of the admission of the contested evidence. On that basis, appellant argues that even if the evidence was admissible under Rule 404(b), the inclusion of the limiting instruction in the jury charge was insufficient to cure the error. Accordingly, he concludes, under the *Rankin* decision, reversal is required. We disagree.

In responding to the original objection, the prosecutor argued the testimony was *res gestae* of the offense. In the seminal case of *Mayes v. State,* 816 S.W.2d 79 (Tex.Crim. App.1991), the Court of Criminal Appeals addressed the doctrine of *res gestae,* or background evidence (as it is now called) in light of Criminal Evidence Rules 401 and 404(b). In doing so, the court emphasized the difference between what it denominated as "back-ground contextual evidence" and "same transaction contextual evidence." In discussing the difference, the court explicated that prior to the adoption of the Rules of Criminal Evidence, both types of evidence were admissible under the rationale stated in *Albrecht v. State,* 486 S.W.2d 97, 100 (Tex.Crim.App. 1972). *Mayes,* 816 S.W.2d at 86. Such evidence should be admitted "[t]o show the context in which the criminal act occurred ... under the reasoning that ... the jury has a right to hear what occurred immediately prior to and subsequent to the commission of the act so that they may realistically evaluate the evidence." *Id.*

However, the *Mayes* court explained, under the present Rules of Criminal Evidence, only the "same transaction contextual evidence" is admissible and the court explicated a two-part test to be used in determining the admissibility of such evidence. *Id.* at 84–85. The first prong requires a determination as to whether the evidence is relevant within the purview of Rule 401. *Id.* at 84. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." If the evidence is determined to be relevant, the second prong necessitates determining whether the evidence should be admitted as an exception under Rule 404(b). *Id.* at 85. Parenthetically, although Rule 404(b) enumerates specific purposes for which "other crimes, acts, or wrongs" are admissible, that list is neither exclusive nor collectively exhaustive. *Rogers v. State,* 853 S.W.2d 29, 33 (Tex.Crim.App. 1993) (*citing Montgomery v. State,* 810 S.W.2d 372, 388 (Tex.Crim.App.1991) (op. on reh'g)). "Same transaction contextual evidence" is admissible if it is of a nature sufficient to impart on the trier of fact information essential to understanding the context and circumstances of events which are blended and interwoven and illuminate the crime charged. *Camacho v. State,* 864 S.W.2d 524, 532 (Tex.Crim.App.1993).

The shouting of the gang name was at the same time and was part of the shoot-

ing incident, thus it was admissible as same transaction contextual evidence. The other evidence about the territorial claims of the gang, and the rivalry between the gang of which Gabriel Perez was a member and the gang of which appellant admitted he was a member, was admissible in explanation of the same transaction contextual evidence. Moreover, the other evidence indicated the motive for, and the intent behind, the shooting. In that connection, we agree with the holding in *Stern v. State,* 922 S.W.2d 282 (Tex.App.— Fort Worth 1996, pet. ref'd), that the admission of "background" gang affiliation evidence is not a problem for appellate courts unless it appears to have been admitted in an effort to subvert Rule 404(b) limitations on the admission of character evidence. *Id.* at 287. In this case, the evidence of the affiliation was related to, and in explanation of, the admissible same transaction contextual evidence. Thus, it was not "character" evidence of such a nature as to require a limiting instruction and was not admitted in an effort to subvert Rule 404(b) limitations. That being so, the trial judge did not err in failing to give an instruction at the time of the receipt of evidence. In that connection, we have not overlooked appellant's argument that "[b]ecause the (trial) Court acknowledged the requirement of giving the limiting instruction ... we can assume that the trial court considered the proper procedure and simply refused to follow it." However, it is the rule that if the trial judge's decision is correct on any theory of law applicable to the case, it will be sustained, even if the judge gives the wrong reason for the decision. That rule is especially true with regard to the admission of evidence. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). Because the judge did not err in the admission of the evidence and the manner by which it was admitted, we must, and do, overrule appellant's second point.

In sum, both of appellant's points are overruled and the judgment of the trial court affirmed.