IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0944-06






MARK WAYNE LOMAX, Appellant


 

v.
 


THE STATE OF TEXAS







ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW 


FROM THE TENTH COURT OF APPEALS

HARRIS COUNTY





 Hervey, J., delivered the opinion of the Court in which Keller, P.J., Meyers,
Price, Keasler and Cochran, JJ., joined. Johnson, J., filed a dissenting opinion in
which, Holcomb, J., joined. Womack, J., not participating.


O P I N I O N


 In this case, we decide that felony driving while intoxicated (felony DWI) (1) can be the underlying
felony in a "felony-murder" prosecution under Section 19.02(b)(3), Tex. Pen. Code, which, among other
things, provides that a person commits murder if he causes a person's death during the commission of a
"felony, other than manslaughter." (2)

 A jury convicted appellant of felony-murder and sentenced him, as an habitual offender with two
prior felony convictions, to 55 years in prison. Viewed in the light most favorable to the jury's verdict, the
evidence shows that appellant was committing felony DWI (3) on a crowded public street and also tailgating,
speeding and weaving when his car collided with another car resulting in the death of a five-year-old girl. (4) 
Appellant's blood-alcohol content was about three times the legal limit at the time of the collision. 
Appellant was charged with felony-murder under Section 19.02(b)(3), with the felony DWI alleged as the
underlying felony. (5)

 Appellant claimed in the trial court and on direct appeal that felony DWI cannot be the underlying
felony for felony-murder, because the underlying felony is what supplies the required culpable mental state
for felony-murder and felony DWI cannot supply this culpable mental state since felony DWI does not
require proof of a culpable mental state. (6) The court of appeals rejected this claim. See Lomax v. State,
No. 10-03-00156-CR, slip op. at 2-4 (Tex.App.-Waco, delivered March 29, 2006) (not designated for
publication) (definition of felony-murder "plainly dispenses with any mental element" when felony DWI is
the underlying felony for felony-murder). We granted review of the following ground:

 Can a felony murder conviction be based on an underlying felony that expressly requires
no mens rea, despite the fact that in a felony-murder conviction, the mens rea for the act
of murder is supplied by the mens rea of the underlying felony?


 The issue is whether Section 19.02(b)(3), which does not prescribe a culpable mental state, "plainly
dispenses" with a culpable mental state. See Section 6.02(b), Tex. Pen. Code, (if definition of offense
"does not prescribe a culpable mental state," a culpable mental state "is nevertheless required unless the
definition plainly dispenses with any mental element"); Aguirre v. State, 22 S.W.3d 463, 470
(Tex.Cr.App. 1999). We must presume that a culpable mental state is required unless a contrary intent
"is manifested by other features of the statute." See Aguirre, 22 S.W.2d at 471-72.

 It is significant and largely dispositive that Section 19.02(b)(3) omits a culpable mental state while
the other two subsections in Section 19.02(b) expressly require a culpable mental state. A person commits
murder under Section 19.02(b)(1), Tex. Pen. Code, when he "knowingly and intentionally" causes a
person's death. A person commits murder under Section 19.02(b)(2), Tex. Pen. Code, when he "intends
to cause serious bodily injury" and commits an act clearly dangerous to human life that causes a person's
death. The omission of a culpable mental state in Section 19.02(b)(3) is "a clear implication of the
legislature's intent to dispense with a mental element in that [sub]section." See Aguirre, 22 S.W.3d at 473. 
As this Court explained in Aguirre, 22 S.W.3d at 472-73:

 The language of the statute is, of course, to be considered. "It is particularly significant
when some such word as 'knowingly' is used in one section of a statute and omitted from
another." [Footnote omitted]. An example is The Meat Inspection Law of 1945.
[Footnote omitted]. The act defined criminal offenses in four consecutive sections. The
first three sections made it unlawful "to knowingly sell" meat from diseased animals,
[footnote omitted] and "to knowingly sell or offer to sell" meat from animals that died other
than by slaughter. [Footnote omitted]. The fourth section made it unlawful simply "to sell"
meat from animals such as horses. [Footnote omitted]. The omission of a culpable mental
state from only one of the four sections was a clear implication of the legislature's intent to
dispense with a mental element in that section. This Court had no difficulty in concluding
that a culpable mental state was not part of the offense defined in that section. See Nell
v. State, 154 Tex. Crim. 549, 552, 229 S.W.2d 361, 363 (1950).


 Appellant argues that interpreting Section 19.02(b)(3) to dispense with a culpable mental state
renders murder under Section 19.02(b)(3) a "strict liability" offense and that "murder is never a strict
liability crime in Texas." While Section 19.02(b)(3) might contain some features not normally associated
with "strict liability" offenses, on balance these features do not overcome the clear legislative intent to plainly
dispense with a culpable mental state. See Aguirre, 22 S.W.3d at 472-76. (7) And, deciding that Section
19.02(b)(3) dispenses with a culpable mental state is consistent with the historical purpose of the felony-murder rule, the very essence of which is to make a person guilty of an "unintentional" murder when he
causes another person's death during the commission of some type of a felony. See Threadgill v. State,
146 S.W.3d 654, 665 (Tex.Cr.App. 2004) (felony-murder is an "unintentional" murder committed in the
course of a felony); Lawson, 64 S.W.3d at 397-403 (Cochran, J., concurring) (discussing history of
felony-murder rule); Rodriguez v. State, 953 S.W.2d 342, 345-54 (Tex.App.-Austin 1997, pet. ref'd)
(Onion, J.) (discussing felony-murder rule at common law, under Texas statutory law until 1974, under the
1974 penal code and case law, and under the 1994 penal code). We hold that Section 19.02(b)(3) plainly
dispenses with a culpable mental state.

 Appellant also claims that interpreting Section 19.02(b)(3) to dispense with a culpable mental state
is inconsistent with Commissioner Reynolds' opinion for this Court in Rodriquez v. State. (8) Appellant
further claims that, in order to affirm the court of appeals' decision, this "Court must acknowledge that
Rodriquez was decided wrongly and the felony murder statute is unconstitutional as vague and indefinite
for failure to state a culpable mental state." (9)

 The defendant in Rodriquez claimed that the felony-murder statute in that case, (10) which, like current
Section 19.02(b)(3), also omitted a culpable mental state, was "unconstitutional for vagueness and
indefiniteness," because it failed to show "what culpable state of mind" was required "in the commission
of the 'act clearly dangerous to human life that causes the death of an individual.'" See Rodriquez, 548
S.W.2d at 28. Commissioner Reynolds' opinion for this Court applied the following analysis to this
constitutional claim:

 Section 6.02 of the Penal Code provides, in part, that


 "(a) Except as provided in Subsection (b) of this section, a person does not commit an
offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages
in conduct as the definition of the offense requires.

 "(b) If the definition of an offense does not prescribe a culpable mental state, a culpable
mental state is nevertheless required unless the definition plainly dispenses with any mental
element.

 "(c) If the definition of an offense does not prescribe a culpable mental state, but one is
nevertheless required under Subsection (b) of this section, intent, knowledge, or
recklessness suffices to establish criminal responsibility."[ (11)]


 From a consideration of these sections together, it logically follows that because
[§ 19.02(b)(3)] is silent as to, and does not plainly dispense with, the culpable
mental state required for the underlying felony committed or attempted, § 6.02(b)
mandates that the culpable mental state shall, as specified in § 6.02(c), be one of intent,
knowledge or recklessness. Upon the establishment of the underlying committed or
attempted felony embracing the requisite mental element, [§ 19.02(b)(3)] then declares that
an act which is committed in the course and in furtherance of, or in immediate flight from,
the underlying committed or attempted felony and which is clearly dangerous to human life
and causes death shall constitute murder. Thus, the culpable mental state for the act
of murder is supplied by the mental state accompanying the underlying committed
or attempted felony giving rise to the act. The transference of the mental element
establishing criminal responsibility for the original act to the resulting act conforms to and
preserves the traditional men rea requirement of the criminal law. [Citation omitted].


 Consequently, [§ 19.02(b)(3)] is not unconstitutional for its failure to specify the
culpable mental state required for the act of murder. The fourth ground is overruled.

 

Rodriquez, 548 S.W.2d at 28-29 (emphasis supplied).

 We begin by noting that the defendant in Rodriquez claimed that a culpable mental state was
required for the "act clearly dangerous to human life." See Rodriquez, 548 S.W.2d at 28. However, the
Rodriquez Court instead decided that the culpable mental state for "the act of murder" is supplied by the
culpable mental state accompanying the underlying felony. See id. But, any culpable mental state
accompanying the underlying felony cannot supply the culpable mental state for "the act of murder," (12)
because the very nature of the felony-murder rule is that there is no culpable mental state "for the act of
murder." See Threadgill, 146 S.W.3d at 665 (felony-murder is an "unintentional" murder committed in
the course of a felony); Lawson, 64 S.W.3d at 397-403 (Cochran, J., concurring).

 Rodriquez also decided, based solely on the omission of a culpable mental state in the applicable
felony-murder statute, that the felony-murder statute did not plainly dispense with a culpable mental state
for the underlying felony. See Rodriquez, 548 S.W.2d at 28 ("it logically follows that because [§
19.02(b)(3)] is silent as to, and does not plainly dispense with, the culpable mental state required for the
underlying felony," then the culpable mental state shall "be one of intent, knowledge or recklessness"). (13) 
But, it is the underlying felony itself, and not the felony-murder statute, that determines whether the
underlying felony requires a culpable mental state. (14)

 Based on the foregoing, we decide to overrule only that portion of the holding in Rodriquez that
a culpable mental state is required for "the act of murder" in a felony-murder prosecution and that the
mental state of the underlying felony supplies this culpable mental state. (15) It is, however, unnecessary to
overrule Rodriquez as having decided that a culpable mental state is required for the "act clearly dangerous
to human life" feature of Section 19.02(b)(3), since Rodriquez did not address that issue. (16)

 We also understand appellant to argue that the 1993 legislative changes to the felony-murder statute
and to other provisions in Chapter 19 and the addition of the more specific intoxication-related offenses
in Chapter 49 indicate a legislative intent that a DWI homicide (whether the DWI be a felony or a
misdemeanor) be prosecuted exclusively as intoxication manslaughter under Section 49.08(a), Tex. Pen.
Code. Appellant argues:

 The presence of a specific statute, intoxication manslaughter, which does not exclude
felony DWI or limit itself to misdemeanor DWI, represents an expression of legislative
intent that intoxication homicides be prosecuted under § 49.08, especially in light of the
fact that the Legislature's intent in enacting Chapter 49 was to gather all intoxication-related offenses and definitions in one chapter, as opposed to having them spread
throughout the penal code.[ (17)]


 Omitting citations to authority and internal quotations, we quote from Judge Onion's opinion in
Rodriguez describing the judiciary's duty to construe a statute when its plain language does not "lead to
absurd consequences that the legislature could not possibly have intended."

 It is the duty of the court to administer the law as it is written, and not to make law; and
however harsh a statute may seem to be, or whatever may seem to be its omission, courts
cannot . . . make it apply to cases to which it does not apply, without assuming functions
that pertain to the legislative department of the government. The legislature is
constitutionally entitled to expect that the judiciary will faithfully follow the specific text that
was adopted.


 In divining legislative intent, we look first to the language of the statute. When the meaning
is plain, we look no further. We focus on the text of the statute and interpret it in a literal
manner to discern a fair, objective meaning of the text. When a court interprets a statute,
it is obliged to implement the expressed will of our legislature, not the will it keeps to itself. 
If the meaning of the statutory text, when read using the established canons of statutory
construction relating to such text, should have been plain to the legislators who voted on
it, courts will ordinarily give effect to that plain meaning. Where the statute is clear and
unambiguous, the Legislature must be understood to mean what it has expressed and it is
not for the courts to add to or subtract from such statute.


Rodriguez, 953 S.W.2d at 353. (18)


 Prior to 1993, former Section 19.05(a)(2) in the penal code codified the DWI version of
involuntary manslaughter. (19) Also, prior to 1993, most DWI offenses were defined in civil statutes outside
the penal code. (20) Under these pre-1993 civil statutes, a person was guilty of felony DWI if the person was
convicted of DWI and it was shown that he had "two or more" prior DWI convictions. (21) In 1993, the
Legislature repealed former Article 6701l, (22) eliminated the DWI version of involuntary manslaughter
codified in former Section 19.05(a)(2), (23) and recodified this offense in almost identical terms as intoxication
manslaughter in Section 49.08(a). (24) The Legislature also recodified felony DWI in Section 49.09(b)(2)
in almost identical terms to its definition in former Article 6701l-1(e)(2) and former Section 12.41(1). (25)

 These 1993 legislative enactments, therefore, made very few substantive changes to prior law. (26) 
These 1993 legislative enactments seem to have been primarily intended, as appellant asserts, "to gather
all intoxicated-related offenses and definitions in one chapter, as opposed to having them spread throughout
the penal code." It is not apparent to this Court that these largely nonsubstantive 1993 legislative
enactments were intended to make Chapter 49 the exclusive domain of DWI homicide prosecutions. 
Nothing in the pre-1993 law required that DWI homicides be prosecuted exclusively under the DWI
version of involuntary manslaughter set out in former Section 19.05(a)(2)--the statutory predecessor to
intoxication manslaughter in Section 49.08(a).

 The plain language of Section 19.02(b)(3) also does not exclude felony DWI as an underlying
felony for a felony-murder prosecution, and we must understand the Legislature to have meant what the
plain language of Section 19.02(b)(3) expresses. (27) In addition, that a general and a more specific statute
might be viewed as proscribing the same conduct does not, standing alone, compel a conclusion that the
Legislature intended that this conduct be prosecuted exclusively under the more specific statute. See State
v. Pembleton, 978 S.W.2d 352, 355-56 (Mo. Ct. App. 1998) (majority rule is that specific statute dealing
with the killing of a person during a DWI does not preempt the general criminal statute because "a
prosecutor has the discretion of choosing which statute to proceed on when two statutes proscribe the
same behavior"). (28)

 Appellant argues that this interpretation of these 1993 legislative changes not making Chapter 49
the exclusive domain of DWI homicides has the effect of allowing intoxication manslaughter to form the
basis of a felony-murder prosecution thereby resulting in the felony-murder rule "swallowing up"
intoxication manslaughter. See Lawson, 64 S.W.3d at 398 (Cochran, J., concurring) (if involuntary
manslaughter could form the basis of a felony-murder prosecution, the "offense of involuntary manslaughter
would be swallowed up by the felony murder rule"). (29) The State argues that this argument is immaterial
because "appellant was charged with felony murder based on felony DWI, not based on intoxication
manslaughter." The State also argues that the plain language of Section 19.02(b)(3) exempts only
manslaughter and that felony DWI is neither manslaughter nor a lesser included offense of manslaughter. 
See Johnson, 4 S.W.3d at 255 (Section 19.02(b)(3) exempts from the felony-murder rule "not only
manslaughter, but also lesser included offenses of manslaughter").

 Appellant's argument is immaterial unless felony DWI is a lesser included offense of intoxication
manslaughter. If felony DWI is a lesser included offense of intoxication manslaughter, then the question of
whether Section 19.02(b)(3) should be interpreted as allowing intoxication manslaughter to form the basis
of a felony-murder prosecution would be squarely presented in this case. The resolution of that question
would be necessary to the decision in this case, because, if intoxication manslaughter would be excluded
from a felony-murder prosecution, then, presumably, under Johnson, any lesser included offense of
intoxication manslaughter would also be excluded. Thus, if felony DWI is a lesser included offense of
intoxication manslaughter, then it too could not form the basis of a felony-murder prosecution.

 We nevertheless decide that felony DWI is not a lesser included offense of intoxication
manslaughter. Felony DWI requires proof of two prior DWI convictions. See Section 49.09(b)(1). Proof
of these two prior DWI convictions are not "facts required," or included within the proof necessary, to
establish intoxication manslaughter under Section 49.08(a). (30) See Article 37.09(1), Tex. Code Crim.
Proc. Proof of injury or risk of injury also is not necessary to establish felony DWI. See Article 37.09(2),
Tex. Code Crim. Proc. Neither felony DWI nor intoxication manslaughter require proof of a culpable
mental state. See Article 37.09(3), Tex. Code Crim. Proc. And, felony DWI does not consist of an
attempt to commit intoxication manslaughter or is "otherwise included" in intoxication manslaughter. See
Article 37.09(4), Tex. Code Crim. Proc. Having decided that felony DWI is not a lesser included
offense of intoxication manslaughter, it is unnecessary to decide whether intoxication manslaughter can form
the basis of a felony-murder prosecution.

 We also agree with the State that felony DWI is neither manslaughter nor a lesser included offense
of manslaughter. In this case, therefore, we give effect to the plain language of Section 19.02(b)(3)
exempting only manslaughter as the underlying felony for felony-murder. (31)

 The dissenting opinion would hold that felony DWI cannot be the underlying felony in a felony-murder prosecution. The dissenting opinion apparently would decide that every DWI homicide should be
prosecuted exclusively as an intoxication manslaughter (32) under an application of the in pari materia rule
of statutory construction, codified in Section 311.026, Tex. Gov't Code. See Dissenting op. at 2; Ex
parte Smith, 185 S.W.3d 887, 889 (Tex.Cr.App. 2006) (in pari materia doctrine is a rule of statutory
construction for determining which statutory provision controls when a general statutory provision and a
more specific statutory provision deal with the same subject matter and they irreconcilably conflict). (33)

 This rule of statutory construction, however, applies only if a "general" provision and a "specific"
provision "irreconcilably conflict." See id. Two statutes irreconcilably conflict when only one of them can
apply to a particular situation. Two statutes do not irreconcilably conflict when, as in this case, both of them
can apply to a particular situation. Presiding Judge Keller's concurring opinion in this Court's recent
decision in Nesbit v. State provides an example of two statutes that irreconcilably conflict. See Nesbit v.
State, slip op. at 6 (Tex.Cr.App. No. PD-1907-05, delivered June 13, 2007) (Keller, P.J., concurring). 
That concurring opinion concludes that, when computing the expiration day of a probationary term, the
Code Construction Act for computing time excludes the first day, while the probation statute includes the
first day. See id. These statutory provisions, therefore, irreconcilably conflict because both statutes (one
including the first day and the other excluding it) cannot apply to computing the expiration of a probationary
term. That situation is not presented here. That Section 19.02(b)(3) and Section 49.08(a) might, in some
situations, apply to the same conduct does not mean that they irreconcilably conflict. See Pembleton, 978
S.W.2d at 355-56; see also Footnote 28.

 In addition, the in pari materia rule of statutory construction "applies where one statute deals with
a subject in comprehensive terms and another deals with a portion of the same subject in a more definite
way." See Alejos v. State, 555 S.W.2d 444, 450 (Tex.Cr.App. 1977) (op. on reh'g). The "rule is not
applicable to enactments that cover different situations and that were apparently not intended to be
considered together." See id. (emphasis removed); see also Burke, 28 S.W.3d at 547 (similarity of
purpose or object is the most important factor in assessing whether two provisions are in pari materia). 
The two statutes at issue here (felony murder and intoxication manslaughter) obviously cover different
situations and apparently were not intended to be considered together. See Burke, 28 S.W.3d at 549 (no
indication that general assault statute and more specific intoxication assault statute "were intended to be
considered together"). The felony-murder statute covers a variety of homicides during the commission of
a felony while the intoxication manslaughter statute is specifically limited to a DWI homicide. See Alejos,
555 S.W.2d at 449-51 (state "properly exercised its option" to prosecute defendant under general statute
of "evading arrest" even though defendant could also have been charged under more specific statute of
"fleeing or attempting to elude a police officer" because these two statutes were not in pari materia). 
Finally, we also note that at least two other intermediate appellate courts have rejected the claim that the
felony-murder statute and the intoxication manslaughter statute are in pari materia. See Hollin v. State,
2006 Tex. App. LEXIS 9286 (Tex.App.-Houston [1st Dist.], October 26, 2006, pet. ref'd); Strickland
v. State, 193 S.W.3d 662, 665-69 (Tex.App.-Fort Worth 2006, pet. ref'd).

 The judgment of the Court of Appeals is affirmed.


 Hervey, J.

Delivered: June 27, 2007

Publish
1. See Section 49.09(b)(2), Tex. Pen. Code.
2. Section 19.02(b)(3) provides that a person commits the offense of murder if he:


 (3) commits or attempts to commit a felony, other than manslaughter, and in the course of
and in furtherance of the commission or attempt, or in immediate flight from the commission
or attempt, he commits or attempts to commit an act clearly dangerous to human life that
causes the death of an individual.
3. The record reflects that appellant had two prior DWI convictions, which made the underlying felony
DWI a third-degree felony. See Section 49.09(b)(2).
4. The evidence, therefore, shows that the victim's death occurred "in the course of and in furtherance
of" appellant's commission of an inherently dangerous felony DWI. See Section 19.02(b)(3); Johnson v.
State, 4 S.W.3d 254, 255-58 (Tex.Cr.App. 1999) (felony-murder conviction can be based upon the
underlying felony without proof of any additional dangerous act beyond that covered by the underlying
felony); Lawson v. State, 64 S.W.3d 396, 400-01 (Tex.Cr.App. 2001) (Cochran, J., concurring) (same).
5. In relevant part, the indictment alleged that appellant "while in the course of and the furtherance of
the commission of [felony DWI] did commit an act clearly dangerous to human life, to wit: by operating his
motor vehicle ... at an unreasonable speed, by failing to maintain a proper lookout for traffic and road
conditions, and by failing to take adequate evasive actions prior to striking a motor vehicle occupied by [the
victim] and did thereby cause the death of [the victim]."
6. The Legislature has plainly dispensed with proof of a culpable mental state for felony DWI. See
Section 49.11, Tex. Pen. Code, (expressly dispensing with proof of culpable mental state in prosecutions
under Chapter 49 with one exception not applicable in this case). 
7. In addition, felony-murder is not like the "strict liability" or "public welfare" offenses described in
Aguirre. See Aguirre, 22 S.W.3d at 472-75. Unlike the "public welfare" offenses described in Aguirre,
Section 19.02(b)(3), though not requiring a culpable mental state, still requires a defendant to commit a
felony involving a clearly dangerous act. This also requires some element of "voluntariness," which, in cases
like this, would include taking that first drink. See Rogers v. State, 105 S.W.3d 630, 635-39
(Tex.Cr.App. 2003) ("voluntary act" requirement must "include an act" that is voluntary and "does not
necessarily go to the ultimate act"). It is, therefore, not completely accurate to characterize Section
19.02(b)(3) as defining a "strict liability" offense.
8. 548 S.W.2d 26, 28-29 (Tex.Cr.App. 1977).
9. Appellant did not raise any constitutional claims in the trial court. We also do not believe that
construing Section 19.02(b)(3) to dispense with a culpable mental state renders it "vague and indefinite." 
It unambiguously apprises an ordinarily intelligent person, with two prior felony convictions and two prior
DWI convictions, that he could go to prison for 55 years if he kills someone during the commission of
another DWI. See Bouie v. City of Columbia, 378 U.S. 347, 350-51 (1964) (constitutional requirement
of definiteness requires criminal statute to give person of ordinary intelligence fair notice that the statute
forbids his contemplated conduct).
10. See Former Section 19.02(a)(3) (1974 Penal Code).
11. These statutory provisions in Rodriquez are consistent with current Sections 6.02(a),(b), and (c),
Tex. Pen. Code.
12. Judge Onion's opinion in Rodriguez states that this "sort of talk is pure fiction."


 The courts sometimes explain felony murder by stating that the felon's intent to commit the
[underlying] felony supplies the intent to kill, so that the felon intended to kill, resulting in
a plain case of intent-to-kill murder. [Citations omitted]. This sort of talk is pure fiction and
it is better to recognize felony murder as a category of murder separate from intent-to-kill
murder.


See Rodriguez, 953 S.W.2d at 353-54, quoting Wayne LaFave & Austin W. Scott, Handbook on
Criminal Law, § 71, at 545 n.2 (West 1972); Lawson, 64 S.W.3d at 401 (Cochran, J., concurring)
(stating that Judge Onion's opinion in Rodriguez contains the "best historical analysis" of the felony-murder
doctrine).
13. But see Aguirre, 22 S.W.3d at 471 (statute's "mere omission of a mental element" cannot,
standing alone, be construed to plainly dispense with a mental element). 
14. It is difficult to imagine how Section 19.02(b)(3), with its silence as to a culpable mental state, could
be construed to require a culpable mental state for an underlying felony for which the Legislature has plainly
dispensed with a culpable mental state. 
15. This holding in Rodriquez is inconsistent with the plain language of Section 19.02(b)(3) and the
historical purpose of the felony-murder rule, and it conflicts with newer, more soundly reasoned, decisions
such as Judge Onion's opinion in Rodriguez and Judge Cochran's concurring opinion in Lawson. See
Awadelkariem v. State, 974 S.W.2d 721, 725 (Tex.Cr.App. 1998) (stare decisis principles have less
force when the older precedent is inconsistent with newer, more soundly reasoned, decisions). 
16. We also note that this Court's subsequent decision in Lugo-Lugo v. State decided that the "act
clearly dangerous to human life" language in what is now Section 19.02(b)(2) does not require a culpable
mental state. See Lugo-Lugo v. State, 650 S.W.2d 72, 81 (Tex.Cr.App. 1983) (culpable mental state
not applicable to the conduct that is clearly dangerous to human life under [Section 19.02(b)(2)] which
requires that the act intended to cause serious bodily injury be objectively clearly dangerous to human life).
17. Appellant has not produced any extratextual legislative history of Chapter 49 to support his claim
that Chapter 49 is the exclusive domain of DWI homicides. Our extratextual research of the legislative
history of the 1993 legislative changes to the penal code (Senate Bill 1067) indicates that the legislative
record is silent on whether the Legislature intended that Chapter 49 be the exclusive domain of DWI
homicides.
18. Accord Boykin v. State, 818 S.W.2d 782, 785-86 (Tex.Cr.App. 1991).
19. See Former Section 19.05(a)(2) (1974 Tex. Pen. Code) (person committed offense of involuntary
manslaughter if he "by accident or mistake" when operating a motor vehicle "while intoxicated and, by
reason of such intoxication, cause[d] the death of an individual").
20. See Former Tex. Rev. Civ. Stat. Ann., art. 6701l-1; Acts 1987, 70th Leg., ch. 507, § 3.
21. See Former Article 6701l-1(e)(2) (if person had "two or more" prior DWI convictions, the offense
was punishable by confinement in jail for a term of not less than 30 days or more than two years "or
imprisonment in the state penitentiary for a term of not less than 60 days or more than five years"); Former
Section 12.41(1) (1974 Penal Code) (any conviction "not obtained from a prosecution under" the penal
code shall be classified as a third-degree felony "if confinement in a penitentiary is affixed to the offense as
a possible punishment").
22. See Acts 1993, 73rd Leg., ch. 900, § 1.15.
23. See Acts 1993, 73rd Leg., ch. 900, § 1.01.
24. See Section 49.08(a) (person commits intoxication manslaughter if person operates a motor vehicle
and "is intoxicated and by reason of that intoxication causes the death of another by accident or mistake").
25. See Section 49.09(b)(2) (person commits felony DWI if he is convicted of DWI and it is shown
that he has two prior DWI convictions).
26. Under the pre-1993 penal code, the DWI version of involuntary manslaughter was a third-degree
felony. See Former Section 19.05(c). This offense (now defined as intoxication manslaughter) is currently
a second-degree felony. See Section 49.08(b).
27. Appellant claims it is significant that there is no history before and after 1993 of felony DWI being
used as the underlying felony in a felony-murder prosecution. We, however, tend to agree with the State's
response that this might in large part be due to this Court's erroneous decision in Rodriquez.
28. In addition, Section 19.02(b)(3) and Section 49.08(a) do not necessarily proscribe the same
conduct. A person, who causes the death of another during the commission of a misdemeanor DWI could
be prosecuted as a second-degree felon under Section 49.08(a), but not as a first-degree felon under
Section 19.02(b)(3). See Sections 49.04; 49.09(a). The Legislature could have also reasonably
determined that a person (such as appellant), who has two prior DWI convictions and causes the death
of another during the commission of another DWI, could be prosecuted as a second-degree felon under
Section 49.08 or as a first-degree felon under Section 19.02(b)(3). While there may be some overlap in
DWI homicide cases between Section 19.02(b)(3) and Section 49.08(a), these two provisions do not
entirely proscribe the same conduct, because conduct proscribed by the latter provision will not always be
proscribed by the former provision.
29. The State disagrees that our interpretation of these 1993 legislative changes has the effect of
allowing the felony-murder rule to swallow up intoxication manslaughter. The State argues:


 Nevertheless, if the appellant is claiming that intoxication manslaughter could always be
tried as a felony murder, he is ignoring the fact that felony murder also requires the
commission of an act clearly dangerous to human life, which is not a part of intoxication
manslaughter. Not every person who drinks and kills someone also commits acts clearly
dangerous to human life such as speeding, tailgating, and weaving through traffic. Those
elements transcend the crime of intoxication manslaughter and make the offender eligible
for a greater punishment. More to the point of the present case, none of these actions are
necessarily part of DWI. Therefore, this Court should not presume that the Legislature
intended to foreclose the prosecution of a felony murder based on felony DWI.


 These arguments are inconsistent with this Court's decision in Johnson. See also Footnote 4. This
Court's decision in Johnson holds that a felony-murder conviction can be based upon the underlying felony
without proof of an additional dangerous act beyond the underlying felony, thus supporting a decision that
death occurs "in furtherance of" the commission of the underlying felony. See also Footnote 4. The State's
arguments would resurrect the judicially created merger doctrine, which "[e]ight members of this Court
explicitly rejected" in Johnson. See Lawson, 64 S.W.3d at 400 n. 20 (Cochran, J., concurring) (noting
that in Johnson, eight members of this Court rejected the contention that a felony-murder conviction is
prohibited unless "the defendant had committed an underlying felony plus an additional act (other than the
conduct covered by the underlying felony) that was clearly dangerous to human life") and at 401
(Legislature did not limit felony-murder "to require the commission of some felony, any felony except
manslaughter, plus an additional violent or dangerous act which causes death") (emphasis in original). 
30. Section 49.08(a) defines intoxication manslaughter as a person who operates a motor vehicle while
intoxicated "and by reason of that intoxication causes the death of another by accident or mistake." 
31. The record in this case reflects that the jury was also instructed on the lesser-included offense of
felony DWI. This Court, therefore, could reform the judgment in this case to reflect a conviction for third-degree felony DWI, if the felony-murder conviction was set aside. See Collier v. State, 999 S.W.2d 779,
782 (Tex.Cr.App. 1999).

 The record also reflects that appellant pled "true" to two enhancement paragraphs each alleging
that appellant had previously been convicted of felony unauthorized use of a motor vehicle. Appellant was,
therefore, subject to a punishment range of 25 to 99 years, or life. See Section 12.42(d), Tex. Pen. Code,
(setting out this punishment range if it is shown on the trial of a "felony offense" that the defendant has
previously been convicted of "two felony offenses"). With a finding of "true" to these two enhancement
paragraphs, appellant would have been subject to the same punishment range (25 to 99 years, or life) even
if he was convicted of third-degree felony DWI or second-degree felony intoxication manslaughter, neither
of which require proof of a culpable mental state. See Section 49.11(a).
32. This arguably would mean that a DWI homicide could not be prosecuted as manslaughter or
criminally negligent homicide. Arguably, this also would mean that a DWI assault with serious bodily injury
could not be prosecuted as an aggravated assault and could only be prosecuted as an intoxication assault. 
However, in Burke v. State, this Court unanimously rejected this latter contention. See Burke v. State,
28 S.W.3d 545, 549 (Tex.Cr.App. 2000) (statutes defining aggravated assault with bodily injury and
intoxication assault are not in pari materia, therefore, state had discretion as to which offense to
prosecute). 
33. The dissenting opinion also suggests that this opinion holds that intoxication manslaughter can be
the underlying felony in a felony-murder prosecution. See Dissenting op. at 4. This opinion, however, does
not so hold and very carefully points out that it is unnecessary to decide that issue in this case.