Jose Manuel Flores **MIJORES,**
Appellant.

v.

The **STATE** of Texas, Appellee.

No. 14–97–01007–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 12, 1999.

**254**

Larry Urquhart, Brenham, for appellants.

Sherry L. Robinson, Chad E. Bridges, Hempstead, for appellees.

Panel consists of Justices YATES, FOWLER and FROST.

## OPINION

WANDA McKEE FOWLER, Justice.

Over his plea of not guilty, a jury found appellant, Jose Manuel Flores Mijores, guilty of aggravated robbery. *See* TEX. PEN.CODE ANN. § 29.03 (Vernon Supp. 1994).[1] The jury sentenced him to life imprisonment in the Texas Department of Criminal Justice, Institutional Division, and assessed a $10,000 fine. He appeals his conviction on four points of error. We affirm the trial court judgment.

### THE CONTROVERSY

On June 24, 1993, Evelyn, the owner of Ultimate Choice Beauty Supply, was at work talking on the phone to her sister in California. Evelyn was inside the locked

---

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised penal code. *See* Acts 1993, 73rd Leg., Ch. 900, § 1.18(b). Therefore, all references to the penal code are to the code in effect at the time the crime was committed.

wood frame building which housed her business. While she was on the phone, someone knocked on her front door. When she unlocked and opened the door, two Hispanic men were at the door and inquired about getting their hair cut. Evelyn informed the men that she ran a beauty supply store and did not perform haircuts. She directed the two men down the street to a store that provided that service. After Evelyn closed and locked her door and resumed her phone conversation with her sister, she heard the two men talking as they walked around her building and knocked on the front door again. When Evelyn unlocked the front door again, the two men rushed into the store. One of the men, Antonio Ernandez Gonzales, had a gun and shot it once into the floor. After a struggle, Gonzales and appellant forced Evelyn onto the floor on her stomach, wrapped an electrical cord and a vacuum cleaner cord around her neck, tied her hand behind her back, and tied her feet together. They also gagged her with a pair of socks. Gonzales placed the gun against Evelyn's head and threatened to shoot her. Gonzales also pulled down Evelyn's pants and sexually assaulted her while appellant pulled on the cords around her neck in an effort to keep Evelyn still.

While Gonzales was assaulting Evelyn, appellant exposed himself and tried to place his penis in her mouth. Evelyn lost consciousness because of the tightness of the cords around her neck. But, when she regained consciousness, she had an unpleasant taste in her mouth. Gonzales and appellant asked Evelyn where she kept her money and the keys to her car. As appellant searched Evelyn's purse, Gonzales asked her which key fit the ignition switch of her car. In the meantime, someone knocked on the front door. The two men scrambled to hide in the store. Evelyn screamed for help when a voice asked her if she was alright. In response to her cry for help, several police officers broke into the store. The police officers had arrived at the scene after they were called by Evelyn's sister, who had heard the robbery and assault over the phone until either Gonzales or appellant noticed the phone was off the hook and hung it up.

On September 14, 1994, appellant pled guilty and a jury sentenced him to sixty years imprisonment and assessed a $5,000 fine. Appellant appealed his conviction to the First Court of Appeals. On September 9, 1996, the First Court of Appeals issued an opinion which reversed and remanded appellant's conviction for a new trial. On July 28, 1997, a second jury found appellant guilty. This jury sentenced appellant to life imprisonment and ordered him to pay a fine of $10,000.

## DISCUSSION AND HOLDINGS

■ In his first point of error, appellant contends the evidence was legally insufficient to support the jury's guilty verdict because the paragraph of the charge applying the law to the facts required the jury to find beyond a reasonable doubt that the primary actor was a person named Antonio Ernandez Gonzales who committed the crime with appellant. The record, however, fails to include any evidence of the primary actor's full name; it only contains his last name, Gonzales. When reviewing the legal sufficiency of the evidence, this court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see Garrett v. State*, 851 S.W.2d 853, 857 (Tex.Crim.App.1993). This same standard of review applies to cases involving both direct and circumstantial evidence. *See King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995). On appeal, this court does not reevaluate the weight and credibility of the evidence, but we consider only whether the jury reached a rational decision. *See Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App.1993).

We are of the opinion that enough evidence exists for a rational trier of fact to reasonably conclude that appellant committed the offense of aggravated robbery. When we make this analysis, we do not analyze the sufficiency of the evidence by the jury charge actually given, but by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 239–40 (Tex.Crim.App.1997). According to *Malik*, "[s]uch a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* at 240. We believe such a hypothetically correct jury charge in this case would not need to include the first name of the co-party. The State does not need to prove the exact name of such a co-party, just the fact that the appellant acted in conjunction with a co-party. To require the State to prove the full name of the co-party would unnecessarily increase the State's burden of proof. After all, the standard formulated by *Malik* "ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted." *Id.* Because the State proved beyond a reasonable doubt that appellant committed an aggravated robbery while acting with a co-party named Gonzales, we overrule appellant's first point of error.

In his second point of error, appellant contends he was denied a fair and impartial trial because the prosecutor "struck at him over his attorney's shoulders" during jury argument in the guilt-innocence phase of the trial. Appellant argues that when the prosecutor stated that "Those are the kind of smoke screens that a defense lawyer will throw up," he misled the jury and denied the appellant a fair and impartial trial. In closing argument, the prosecutor stated:

And talk about memory gaps, I know that Mr. Parham [appellant's trial counsel] during his closing argument couldn't recall which officer he asked a question of just yesterday. So much less what transpired four years ago. Was the door locked or unlocked; or was it a 20–minute conversation or a two-hour conversation? It doesn't make any difference, does it? Doesn't really. Those are the kind of smoke screens that a defense lawyer will throw up.

The prosecutor was responding to appellant's counsel's attempt to point out the inconsistencies in minor details of the robbery four years after it occurred. However, appellant's trial counsel did not object to this argument when it occurred. Before error may be preserved for an improper jury argument, a defendant must object to that potential error. *See McFarland v. State*, 928 S.W.2d 482, 510 (Tex.Crim.App. 1996). "Appellant made no objection on these grounds to the State's argument at trial; therefore, he has not preserved the issue of the alleged jury argument error." *Id.* However, appellant argues that even though he failed to object, this court should still address his argument because the prosecutor's error falls under the exception to the above rule that exists when the prosecutor's argument is so prejudicial that an instruction to disregard will not cure the harm. The Texas Court of Criminal Appeals has overruled such an exception and stated that the only pertinent question is whether the appellant objected and pursued that objection to an adverse ruling. *See Valencia v. State*, 946 S.W.2d 81, 82 (Tex.Crim.App.1997). Because appellant did not object to the prosecutor's statement, he failed to preserve error. *See* Tex.R.App. P. 33.1. We overrule appellant's second point of error.

In his third point of error, appellant contends the trial court committed reversible error when it overruled his objection during jury argument in the guilt-innocence phase of trial to the prosecutor's statement of his personal opinion

that the complainant gave truthful testimony. Appellant argues that the statement improperly injected the prosecutor's personal opinion into jury argument. We disagree. The State's comments were invited argument, directed at remarks opposing counsel made. "Jury argument must be confined to four permissible areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement." *Wilson v. State*, 938 S.W.2d 57, 59 (Tex.Crim.App.1996).

Originally, appellant's attorney argued the following:

Again, what I say for the next 28 minutes is not testimony. It's my opinion.

... When Ms. Parnell took the stand, and she is sitting in the audience today, the one thing that kept coming back to me when Mr. Barron was asking questions is that she answered them very freely, very straightforward. When I asked them, it was, "I can't remember small details." What may be a small detail to one person, may not be a small detail to another. In this kind of a crime for which my client stands charged, nothing is a small detail. There was trouble remembering whether the door was locked. There was trouble remembering how many times she had to go to the door. There was trouble remembering was the door open, was the door closed, was it a dead bolt. Did you use a key to unlock the dead bolt? Who had the keys when two individuals bursted [sic] through the door? Whose hands were those keys? [sic] Where did they fall? Those are not small details.

....

What you did gain from this case was a whole lot of information about a sexual assault, a whole lot of testimony about sexual assault. And, unfortunately, I am going to cover that with you. Ms. Parnell told you while she was passed out she believes Mr. Mijores had sexual intercourse with her mouth. She told you that she was spitting semen into that blue handkerchief. But do you remember the critical question I asked—I don't remember if it was Officer Canales, maybe Officer Walker, maybe both of them. If Mr. Mijores—the first question: How many pairs of pants was Mr. Mijores wearing? Two pair. The inner pair was buttoned and zipped. The coveralls were not. Was he wearing underwear? Yes, he was.

Then when I asked Officer Walker, Well ma'am, do you know if his underwear was sent to DPS? I think so. I don't know. There [sic] were tagged. Were they ever tested to see if, in fact, he had semen on his underwear? Doesn't make sense that he wouldn't have?

When I first read to you a list of names, I read a Douglas Niemtschk, DPS crime lab. Douglas Nitch [sic] didn't come to testify. Do you further remember back when I started the argument, way back when we started picking the jury, I said I don't have to say anything. I don't have to do anything but sit here. I don't have to put a witness on the chair. But I read you the names of witnesses that the state had given me, and that was their chemist. Where was he? Why did he not testify to the results of the test? The only conclusion you can draw from that is there was none. There were no results. Does that make sense?

In response, the State stated:

Mr. Parham asked you why we didn't bring you a lab technician to testify about the sexual assault. Well, he knows very well that he filed a motion to prevent that and the Court granted it.

MR. PARHAM: Objection, Judge.

MR. BARRON: This is in response to his argument in all fairness.

THE COURT: Counsel, approach the bench.

(Whereupon a bench discussion took place off the record.)

THE COURT: Objection will be sustained. The last statement of counsel will be struck, and you are not to consider it for any purposes during your deliberations.

MR. PARHAM: Judge, I move for a mistrial.

THE COURT: Will be denied.

MR. BARRON: Let me just say this: This is an aggravated robbery case. We are not required to prove every element of a sexual assault case in this trial, and I don't need some lab technician from Austin to come up here and testify that there was semen in that rag because I believe this lady.

MR. PARHAM: Judge, objection to what he believes of anybody. That's totally inappropriate argument.

MR. BARRON: Based on the evidence.

THE COURT: Overruled.

The prosecutor's statement was made in response to defense counsel's argument that in his personal opinion the complainant was not being entirely honest about the assault. The State's comments were within one of the four permissible areas of jury argument. *See Wilson*, 938 S.W.2d at 59. As the State's comments were an answer to the argument of opposing counsel, the trial court did not err when it overruled appellant's objection. In addition, even if the State's argument was not a response to the defense counsel's argument, the prosecutor removed any impropriety when he added that he based his conclusion on the evidence. *See Giesberg v. State*, 945 S.W.2d 120, 126 (Tex.App.— Houston [1 Dist.] 1996) (stating that as long as a prosecutor's statement about the credibility of a witness was based on the evidence and inferences from the evidence, it was proper argument), *aff'd*, 984 S.W.2d 245 (Tex.Crim.App.1998), *and cert. denied*, 525 U.S. 1147, 119 S.Ct. 1044, 143 L.Ed.2d 51 (1999). We, therefore, overrule appellant's third point of error.

In his fourth point of error, appellant contends that the trial court erred during the prosecutor's jury argument in the punishment phase of the trial by refusing to grant appellant's motion for mistrial because the prosecutor allegedly commented on his failure to testify. During punishment, the prosecutor argued as follows:

If a crime ever called out for a maximum sentence, ladies and gentleman, this one does. He has given you no reason to show him any mercy.

MR. PARHAM: Object to comment on testimony coming from or not coming from the defendant, Judge.

THE COURT: Sustained.

MR. PARHAM: Ask the jury to disregard.

THE COURT: You are not to consider for any purpose the last statement of counsel.

MR. PARHAM: Judge, I will move for mistrial.

THE COURT: Will be denied.

Appellant argues that his motion for mistrial should have been granted. We disagree. In a similar situation, the Texas Court of Criminal Appeals stated, "Even assuming that the statements did indirectly refer to appellant's failure to testify, we find that the trial court's immediate instruction to disregard was sufficient to cure the error, if any." *Jackson v. State*, 745 S.W.2d 4, 15 (Tex.Crim.App.1988). Thus, the Texas Court of Criminal Appeals ruled that the motion for mistrial was properly overruled. *See id.* The *Jackson* opinion controls in this situation. Here, the trial court cured any potential error with his instruction to disregard; the trial court did not need to grant appellant's motion for mistrial. Appellant's fourth point of error is overruled. We affirm the trial court judgment.