In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00163-CR


______________________________




DEMETRICK CORTEZ CHRISTIAN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 188th Judicial District Court


Gregg County, Texas


Trial Court No. 36,010-A




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



 Demetrick Cortez Christian (1) appeals from the denial of a motion to quash an indictment
alleging he committed murder in the course of delivering a controlled substance. Section 1.03 of
the Texas Penal Code states that Titles 1 through 3 of the Code apply to offenses defined by other
laws. Tex. Penal Code Ann. § 1.03 (Vernon 2003). In his sole argument on appeal, Christian
contends this Section impliedly bars the use of a violation of a drug offense in the Texas Health and
Safety  Code  as  the  felony  required  to  prove  an  element  of  murder.  See  Tex.  Penal  Code
Ann. § 19.02(b)(3) (Vernon 2003) (commonly called felony murder). We disagree and affirm the
trial court's decision denying the motion to quash. 


I. FACTUAL AND PROCEDURAL HISTORY 


 A. A Drug Deal Gone Bad 


 Christian admitted to brokering a crack cocaine deal between dealer Brandon Mayfield and
Pedro Santos. He brought the dealer to Santos' house to complete delivery of the crack cocaine. 
According to Christian, Santos' girlfriend, Mary Colbert, opened the door and invited the men inside. 
Colbert testified she was walking out of the front door on her way to work when two men wearing
bandannas over their faces came up behind her with a gun and told her to step back inside. (2) 

 According to Christian, Santos refused to pay after Mayfield delivered the crack cocaine. 
This led Mayfield to beat Santos over the head several times with a Glock 40, while Christian held
a gun to Colbert's side to keep her at bay. During the bloody beating, which resulted in a "pool of
blood" cumulating on the bathroom floor, the gun fell to the ground. Mayfield picked the gun up
and cocked it. Fearing for his life, Santos struggled with Mayfield for control of the gun. Amidst
the melee, Mayfield was shot, and he promptly fled Santos' home with Christian in tow. 

 Several Longview police officers were dispatched to the scene. They observed Santos
standing on his porch in a pool of blood with a blood-soaked towel on his head. Although Santos
was quickly transported to the emergency room, his brain hemorrhaged and he died as a result of the
blunt-force injury. 

 B. Procedural History 


 Christian was indicted under several counts and convicted only on the charge that he:

 

 did then and there intentionally or knowingly commit or attempt to commit an act
clearly dangerous to human life, to-wit: beat Pedro Santos with a firearm, that
caused the death of Pedro Santos, and the defendant was then and there in the course
of intentionally or knowingly committing a felony, to-wit: delivery of a controlled
substance, and the death of Pedro Santos was caused while the defendant was in the
course of and in furtherance of the commission or attempt of said felony. 

 Christian filed a motion to quash this indictment, alleging that this paragraph was "defective
in that it fail[ed] to state an offense under the penal code in that Title 5 of the Penal Code do[es] not
apply to the Controlled Substances Act." The trial court held a hearing in which Christian's counsel
referred to Section 1.03 of the Texas Penal Code and argued "the only three sections of the Penal
Code that incorporate other law that create felonies are in Titles 1, 2, and 3." The motion to quash
was denied, and Christian was sentenced to twenty-five years' incarceration and a $5,000.00 fine. (3) 

II. ANALYSIS 


 Since the sufficiency of a charging instrument presents a question of law, we review de novo
a trial court's decision denying a motion to quash an indictment. State v. Barbernell, 257 S.W.3d
248, 251-52 (Tex. Crim. App. 2008); Lawrence v. State, 240 S.W.3d 912, 915 (Tex. Crim. App.
2007); Tollett v. State, 219 S.W.3d 593, 596 (Tex. App.--Texarkana 2007, pet. ref'd). 


 The Texas Penal Code states a person commits an offense if he or she:

commits or attempts to commit a felony, other than manslaughter, and in the course
of and in furtherance of the commission or attempt . . . he commits or attempts to
commit an act clearly dangerous to human life that causes the death of an individual. 


Tex. Penal Code Ann. § 19.02(b)(3) (Vernon 2003). 

 

 Christian alleges the State failed to "state a criminal offense." Although both murder and
delivery of a controlled substance are felonies, Christian argues that Texas precedent and the
language of Section 1.03 prohibit the application of the Texas Penal Code to the Texas Health and
Safety Code. See Tex. Health & Safety Code Ann. § 481.112 (Vernon 2003). 

 The elemental principle of transferred intent is ingrained in the history of our criminal law. 
Lomax v. State, 233 S.W.3d 302, 304 (Tex. Crim. App. 2007) (deciding that felony murder statute
"dispenses with culpable mental state is consistent with the historical purpose of the felony-murder
rule, the very essence of which is to make a person guilty of an 'unintentional' murder when he
causes another person's death during the commission of some type of a felony"). Thus, in essence,
Christian argues intent to deliver cocaine cannot be transferred to satisfy the requirements of Section
19.02, i.e., there is no underlying offense. To aid our determination in this matter, we will begin by
interpreting the plain meaning of the felony murder statute. 

 A. The Plain Meaning of the Felony Murder Statute 


 If the language of a statute is clear and unambiguous, extrinsic aids and rules of statutory
construction are inappropriate, and the statute should be given its common everyday meaning. City
of Rockwall v. Hughes, 246 S.W.3d 621, 625-26 (Tex. 2008); Rodriguez v. State, 953 S.W.2d 342,
353 (Tex. App.--Austin 1997, pet. ref'd). If a word is clearly and unambiguously defined by the
Legislature, the definition is binding on the courts. Transport Ins. Co. v. Faircloth, 898 S.W.2d 269,
274 (Tex. 1995). "The provisions of [the Penal Code] shall be construed according to the fair import
of  their  terms,  to  promote  justice  and  effect  the  objectives  of  the  code."  Tex.  Penal  Code
Ann. § 1.05 (Vernon 2003). 

 Section 19.02(b)(3) of the Texas Penal Code allows the transfer of intent of any person who
"commits or attempts to commit a felony, other than manslaughter." Threadgill v. State, 146 S.W.3d
654, 665 (Tex. Crim. App. 2004). The definition of "felony" is "an offense so designated by law or
punishable by death or confinement in a penitentiary." Tex. Penal Code Ann. § 1.07(a)(23)
(Vernon Supp. 2008). The Code further defines "law" as including "the constitution or a statute of
this state or of the United States." Tex. Penal Code Ann. § 1.07(a)(30) (Vernon Supp. 2008). 
Since the Health and Safety Code is a Texas law that designates delivery of cocaine as a felony, and
this felony is not manslaughter, the plain reading of the statute leads us to conclude delivery of a
controlled substance can be used to supply the underlying offense in a felony murder charge.

 B. Canons of Construction

 One familiar canon firmly grounded in Texas jurisprudence is the rule of expressio unius est
exclusio alterius, (4) reasoning that a statute's inclusion of a specific limitation excludes all other
limitations of that type. United Servs. Auto Ass'n v. Brite, 215 S.W.3d 400, 403 (Tex. 2007); State
v. Mauritz-Wells Co., 141 Tex. 634, 175 S.W.2d 238, 241 (1943); Rodriguez, 953 S.W.2d at 354
(citing Guinn v. State, 696 S.W.2d 436, 438 (Tex. App.--Houston [14th Dist.] 1985, pet. ref'd)). 
Here, the felony murder statute exempts only manslaughter as an underlying offense. Application
of expressio unius est exclusio alterius suggests that all other felonies can serve as an underlying
offense.

 Another canon of construction mandates the presumption that the Legislature knew of prior
court decisions before enacting or amending a statute. Cases decided before the amendments made
to the felony murder statute in 1994, and wherein petitions for discretionary review were refused by
the Texas Court of Criminal Appeals, specifically included the application of extra-penal offenses
to the felony murder rule. Nevarez v. State, 847 S.W.2d 637, 641, 648 (Tex. App.--El Paso 1993,
pet. ref'd) (affirming denial of motion to quash a felony murder indictment with possession of
marihuana as underlying offense); Bryant v. State, 793 S.W.2d 59, 60 (Tex. App.--Austin 1990, pet.
ref'd) (upholding conviction based on felony murder indictment with possession of marihuana as
underlying offense); Stanford v. State, No. 01-87-00899-CR, 1988 WL 113997, at *1-3 (Tex.
App.--Houston [1st Dist.] Oct. 27, 1988, pet. ref'd) (mem. op., not designated for publication)
(upholding trial court's denial of defendant's motion to quash indictment based on argument that
possession and delivery of cocaine could not supply mens rea for felony murder statute). Thus, the
Legislature was presumed to know Texas courts were approving the use of offenses in the Texas
Health and Safety Code to supply the felony required in the felony murder statute, but did nothing
in subsequent amendments which would exhibit disagreement with these holdings. See Davis v.
State,  Nos.  05-98-02108-CR,  05-98-02109-CR,  2000  WL  768632,  at  *4  (Tex.  App.--Dallas
June 15, 2000, pet. ref'd) (mem. op., not designated for publication) (discussing application of felony
murder statute to drug sale). 

 C. Christian's Cited Cases Are Distinguishable 

 Despite our holding that the plain meaning of the felony murder statute is dispositive of
Christian's point of error, we must address the three cases forming the majority of his argument. In
each of these cases, the defendant was charged with attempting or conspiring to commit an offense
not found in the Texas Penal Code. 

 The first case is Moore v. State, 545 S.W.2d 140 (Tex. Crim. App. 1976). In Moore, an
appeal was taken from a conviction of attempt to obtain a controlled substance through fraud. Id.
at 141. Moore did not violate the Controlled Substances Act in the Texas Health and Safety Code
on which the indictment was based because the statute required actual possession of the substance. 
In order to circumvent this obvious deficiency, the State argued that the Legislature intended for the
general criminal attempt provision enumerated in Title 4 of the Texas Penal Code to apply to
violations of the Controlled Substances Act. Id. Reasoning that Section 1.03(b) of the Texas Penal
Code specifically stated only "Titles 1, 2, and 3 of this code apply to offenses defined by other laws,"
and aptly noting there was no law that prohibited attempted possession, the Texas Court of Criminal
Appeals concluded that the attempt provision in Title 4 of the Penal Code was not meant to combine
with the Health and Safety Code to create a new offense. Id. at 142. The court held the indictment
did not allege an offense and, therefore, the conviction was void. Id. 

 This ruling was affirmed in Baker v. State, decided the following year. 547 S.W.2d 627 (Tex.
Crim. App. 1977). Baker was charged with conspiracy to sell marihuana. Id. at 628. Once again,
the Controlled Substances Act under which Baker was charged required an intentional or knowing
delivery of marihuana. Id. The State argued that the Texas Penal Code's general criminal conspiracy
statute contained in Title 4 could latch onto the Controlled Substances Act to create a new
offense--the conspiracy to sell marihuana. Id. at 629. The court rejected the State's argument,
employing the same reasoning as in Moore, and held the criminal conspiracy statute did not apply
to the Controlled Substances Act. Id. Consequently, the Texas Court of Criminal Appeals found
the underlying conviction was void because the charging instrument did not allege an offense against
the laws of the state. Id. 

 The last case addressed by Christian was State v. Colyandro, 233 S.W.3d 870 (Tex. Crim.
App. 2007). John Colyandro, James Ellis, and Tom Delay were charged with conspiracy to violate
certain provisions of the Texas Election Code, including conspiracy to make an unlawful political
contribution. Id. None of the provisions of the Texas Election Code with which they were charged
made mere conspiracy to violate the Code an offense. As in Baker, the State argued that the general
criminal conspiracy statute could tag onto the Texas Election Code to create a new violation. Id. 
The Texas Court of Criminal Appeals granted review on the State's allegation that the lower court
erred in holding that "the criminal conspiracy provisions of section 15.02 of the Texas Penal Code
did not apply to the felony offense of making an illegal contribution under the Texas Election Code." 
Id. at 874. 

 In Colyandro, the majority reaffirmed and relied on Baker and Moore, which they stated
"yielded broad implicit holdings--that the inchoate offenses contained in Title 4 do not apply to
offenses defined outside the Penal Code." (5) In other words, the court was bound by the principle of
stare decisis and held the conspiracy statute could not apply to the Election Code to create a new
offense. Id. at 874-76, 884. The majority also noted that, after Baker and Moore were decided, the
Legislature amended many, but not all, extra-penal code provisions to specifically include
conspiracy. Based on the rationale that the Legislature had ratified its decision in Baker and Moore,
the court determined not to globally apply conspiracy to extra-penal code offenses. Id. at 878. The
court upheld the trial court's finding that the indictment failed to allege an offense and its quashing
of the "Election Code-based conspiracy charges." Id. at 885. (6)

 In contrast with these three cases, Christian was charged with a violation of the Penal Code: 
murder. Murder is committed if a person:

 (1) intentionally or knowingly causes the death of an individual;


 (2) intends to cause serious bodily injury and commits an act clearly
dangerous to human life that causes the death of an individual; or


 (3) commits or attempts to commit a felony, other than manslaughter, and
in the course of and in furtherance of the commission or attempt , or
in immediate flight from the commission or attempt he commits or
attempts to commit an act clearly dangerous to human life that causes
the death of an individual.


Tex. Penal Code Ann. § 19.02. 


 The three methods of committing murder set forth in the statute are different manner and
means of committing the same offense, not distinct and separate offenses. Gandy v. State, 222
S.W.3d 525, 529 (Tex. App.--Houston [14th Dist.] 2007, pet. ref'd) (citing Aguirre v. State, 732
S.W.2d 320, 325-26 (Tex. Crim. App. 1982) (holding that, where indictment contained two
paragraphs, the first alleging murder under Section 19.02(b)(1) and the second alleging murder under
Section 19.02(b)(3), the allegations were merely two different manner and means of committing the
same offense)).

 Christian was convicted for committing the offense of murder by the third manner and means
authorized by the statute, usually referred to as the felony murder rule. Therefore, to convict
Christian of murder by this manner and means, the State had to present evidence that he committed
a felony. This indictment did not authorize a conviction for an offense that did not exist in law, but
merely delineated the proof necessary to meet the statute's requirements for this particular manner
and means of committing murder. In Baker, Moore, and Colyandro, each of the offenses were
created and defined by incorporating provisions from Title 4 (not 1, 2, or 3) of the Penal Code into
violations of the law found outside the Penal Code. Here, the offense is promulgated in a well-established provision of the Texas Penal Code, which simply sets forth the methods for proving the
statute was violated. We find these cases are distinguishable. 


 The holding of Colyandro, which is binding precedent, is that "the inchoate offenses
contained in Title 4 do not apply to offenses defined outside the Penal Code." Colyandro, 233
S.W.3d at 874-75. However, in dictum (7) the Texas Court of Criminal Appeals also stated that the
Texas Penal Code "directs the export of the provisions contained only in Titles 1, 2, and 3" and
"contemporaneously bars the import of extra-penal offenses to offenses in Titles 4 through 11 of the
Penal Code." Id. at 884. The dissent pointed out the difficulty of this dictum.

 We need not apply this dictum to our case. The Moore, Baker and Colyandro opinions all
dealt with fact situations that clearly did not amount to offenses under the extra-penal code sections
with which those defendants were charged. In other words, there was no such crime as conspiracy
or attempt to violate the Texas Health and Safety Code or the Texas Election Code. In those cases,
the State could only survive a motion to quash if it could somehow attach an attempt or conspiracy
provision to a statute outside the Texas Penal Code. Basically, the courts had to deal with the issue
of whether a creative indictment could create a new offense for which the Legislature did not
provide. 

 Here, the felony offense of murder, contained in the Penal Code, was charged by the
indictment. The manner and means of proving this form of murder was by the commission of a
felony. This felony offense supplied the intent for felony murder as has historically been understood
and applied in this State. No new offense was created in the indictment and no absurd result bars
the application of the plain meaning of the statute. For this reaon, we need not venture into
Colyandro's dictum. Moreover, we do not think that Colyandro, in its limited ruling, intended to
overturn Texas felony murder jurisprudence as commonly understood in the courts of this State. 

III. CONCLUSION

 We affirm the trial court's judgment denying Christian's motion to quash the indictment. 





 Jack Carter

 Justice


Date Submitted: April 2, 2009 

Date Decided: April 24, 2009 


Publish 




1. The indictment and pleadings in his first trial (ending in mistrial) refer to Demetrick
Christian, while all the pleadings in the second trial before us refer to Demectrick Christian. 
2. Colbert's version of the story is corroborated by Christian's and Santos' employer, Troy
Morgan. 
3. Christian also objected to the inclusion of this indictment language in the trial court's charge.
4. Literal translation: The expression of one thing is the exclusion of another.
5. Before enactment of the Texas Penal Code, criminal statutes were scattered throughout
Texas jurisprudence. When the Texas Penal Code was enacted, Titles 1 through 3, which involved
general provisions and principles of criminal responsibility and punishments, were expressly applied
to extra-penal offenses through Section 1.03 as a general framework for all criminal statutes.
6. A vigorous dissent was filed by Judge Cochran and three other members of the court. Judge
Price wrote a concurring opinion which indicated he agreed with Judge Cochran's reasoning, but felt
bound by stare decisis. Judge Price further served notice that future reliance on Moore and Baker
would be, "at best, unwise." Colyandro, 233 S.W.3d at 886.
7. Dicta is language in an opinion that is unnecessary to the disposition of the case. State v.
Brabson, 976 S.W.2d 182, 186 (Tex. Crim. App. 1998). This Court is duty bound to accept the
guidance of decisions of the Texas Court of Criminal Appeals (even though they are five-four
decisions) unless the language of the decision in question is only dicta and not a part of the ratio
decidendi. Dunkins v. State, 838 S.W.2d 898, 900 n.1 (Tex. App.--Texarkana 1992, pet. ref'd).


order-themecolor:text1;
 mso-border-alt:solid black .5pt;
 mso-border-themecolor:text1;
 mso-padding-alt:0in 5.4pt 0in 5.4pt;
 mso-border-insideh:.5pt solid black;
 mso-border-insideh-themecolor:text1;
 mso-border-insidev:.5pt solid black;
 mso-border-insidev-themecolor:text1;
 mso-para-margin:0in;
 mso-para-margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Calibri","sans-serif";
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;}











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00122-CR

                                                ______________________________

 

 

                             VANESSA RENEE WREYFORD,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the County
Court at Law No. 2

                                                             Smith County, Texas

                                                      Trial Court No. 002-83290-09

 

                                                       
                                           

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            In a jury
trial, in contesting mainly whether Vanessa Renee Wreyford was intoxicated at
the time she drove along a public thoroughfare in Smith County,[1]
the attorneys got a little testy.  In the
process, Jacob Putman, Assistant District Attorney, improperly characterized
Wreyfords counsel as having lied to the jury and, at a different time, as a snake
oil salesman.

            Wreyford
appeals from her conviction for driving while intoxicated (DWI) and her
sentence of ninety days confinement in the Smith County jail.  Wreyford alleges that the evidence is legally
insufficient[2] to support her
conviction and that the trial court erred in overruling objections to the States
statements concerning her attorney.  Although
we condemn the above statements of Putman verbally abusing Wreyfords attorney,
we affirm the trial courts judgment, because (1) sufficient evidence
supports Wreyfords DWI conviction, and (2) no reversible error appears
concerning the States statements.

 

 

(1)        Sufficient Evidence
Supports Wreyfords DWI Conviction

 

            In evaluating Wreyfords legal
sufficiency challenge, we review all of the evidence in the light most
favorable to the jurys verdict to determine whether any rational jury could
have found the essential elements of DWI beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319 (1979); Sanders
v. State, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003); Hartsfield v. State, 305 S.W.3d 859, 863 (Tex. App.Texarkana 2010,
pet. refd) (citing Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). 
During our examination, we give deference to the responsibility of the
jury to fairly resolve conflicts in testimony, to weigh the evidence, and to
draw reasonable inferences from basic facts to ultimate facts.  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 31819).

            Sufficiency
of the evidence is measured by the elements of the offense as defined by a
hypothetically correct jury charge.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); see also Grotti
v. State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); Vega v. State, 267 S.W.3d 912, 916 (Tex. Crim. App. 2008).  Under a hypothetically correct jury charge, Wreyford
committed the offense of DWI if (1) she (2) operated (3) a motor vehicle (4) in
a public place (5) while intoxicated. 
Tex. Penal Code Ann. §
49.04 (Vernon 2003).  Intoxicated, the
crux of Wreyfords complaint, means:

(A)       not
having the normal use of mental or physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug, a dangerous drug, a
combination of two or more of those substances, or any other substance into the
body; or

 

(B)       having
an alcohol concentration of 0.08 or more.

 

Tex. Penal Code Ann.
§ 49.01(2) (Vernon 2003).

 

            Trooper Trevor Phillips was
patrolling the highway at 11:00 p.m. when he noticed Wreyfords vehicle was
without a front license plate and with a defective license plate light on the
very back.  He testified she was driving
40 to 45 miles an hour in a 65-mile-per-hour zone. Phillips initiated
[his] emergency lights and claimed Wreyford was slow to respond.  After initial contact, Wreyford was able to
retrieve her license and insurance without difficulty.  Yet, because Phillips detected a strong odor
of an alcoholic beverage coming from the interior of the vehicle, he asked her
to exit the vehicle and determined that the smell of alcohol was coming from
her breath and person.  Wreyford told
Phillips she had one to one and a half beers. 


            Phillips noticed
she wasnt walking a straight line as she walked towards the front portion of
[his] vehicle, and decided to administer a series of field sobriety
tests.  According to Phillips, Wreyford
exhibited six out of six clues during the horizontal gaze nystagmus test,
including a pronounced lack of smooth pursuit in both eyes.  Noting the NHTSA statement that a display of
four or more clues indicates a high probability of intoxication, Phillips moved
to the walk and turn test.  He testified
Wreyford failed this test because she couldnt balance during instruction; she
also started too soon; she missed heel to toe; she stepped off line; and she
turned improperly.  Phillips also
claimed Wreyford swayed while balancing, . . . put her foot down and . . .
used her arms for balance during the one-leg-stand test.  Wreyford passed the fourth finger count
observation test.  

            After
administering these tests, Phillips concluded with 100 percent assurance that
Wreyford was intoxicated.  Wreyford refused
to provide any type of breath sample. 
In transit to the jail following her arrest, Wreyford told Phillips she
believed she [was] a little intoxicated but didnt deserve to go to jail.  Wreyford reportedly used profanity and then
began to fall asleep.  

            After
hearing Phillips testimony and watching a video recording of the arrest, the
jury found Wreyford guilty.  Viewing all
of the evidence in a light most favorable to the jury that found Phillips
testimony credible, we conclude that a rational jury could find beyond a
reasonable doubt that Wreyford did not have the normal use of her physical
faculties by reason of the introduction of alcohol.  The evidence is legally sufficient to support
the jurys verdict.

(2)        No Reversible Error Appears Concerning the
States Statements

 

            Permissible
jury argument falls into one of four areas:  (1) summation of the evidence; (2) reasonable
deduction from the evidence; (3) an answer to the argument of opposing counsel;
or (4) a plea for law enforcement.  Cannady v. State, 11 S.W.3d 205, 213
(Tex. Crim. App. 2000).  Argument that
strikes at a defendant over the shoulders of defense counsel is improper.  Wilson
v. State, 7 S.W.3d 136, 14647 (Tex. Crim. App. 1999); Dinkins v. State, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995).  A prosecutor risks improperly striking at a
defendant over the shoulder of counsel when the argument is made in terms of
defense counsel personally and when the argument explicitly impugns defense
counsels character.  Mosley v. State, 983 S.W.2d 249, 259
(Tex. Crim. App. 1998).
 Such argument has been repeatedly
condemned.  Gomez v. State, 704 S.W.2d 770 (Tex. Crim. App.
1985); Fuentes v. State,
664 S.W.2d 333 (Tex. Crim. App. 1984).

            Even when an
argument exceeds the permissible bounds of these approved areas, it will not be
reversible unless the argument is extreme or manifestly improper, violates a
mandatory statute, or injects into the trial new facts harmful to the accused.  Wesbrook
v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (citing Todd v. State, 598 S.W.2d 286, 29697
(Tex. Crim. App. 1980)).  The prosecutors
remarks must have been a willful and calculated effort to deprive a defendant
of a fair and impartial trial.  Id. (citing Cantu v. State, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)).  In most instances, the courts instruction to
disregard the remarks will cure the error.  Wilkerson
v. State, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994); Cooks v. State, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992).

            During jury argument at the
guilt/innocence phase, Erick Platten, Wreyfords attorney, referred to Phillips
and argued:

The evidence as you heard it from this stand.  Thats what weve got.  You just dont show up and start slinging
stuff all over the place and see whats going to catch.  Well, Im trained in field sobriety testing,
and Ive pulled over so many people and this, that and everything else.  I am not saying hes a bad guy or anything
like that.  He is doing his job.  Doing a job that the billboards throughout
this state say.  You drink.  You drive. 
You go to jail.  I am not
endorsing alcohol and drunk driving, like I said, but what yall saw was
someone that was not driving while intoxicated.

 

            The
following exchange occurred during the subsequent argument by Assistant
District Attorney Putman:

            MR. PUTMAN:          The walk and turn test. 
You need two clues to be intoxicated. 
She had five clues.  Now,
understandably, you couldnt see them on the video.  She misses heel to toe and steps off
line.  You couldnt see it because the
hood of the car was in the way.  There is
nothing we can do about that.  But the
trooper was there, and he told you. 
Trooper Phillips has no reason to lie to you.  And make no mistake, Mr. Platten flat out
called him a liar.  He said, I dont
think hes a bad guy.  I think he was
doing his job.  But thats not all he
said.  He said

 

            MR. PLATTEN:         Objection.  Striking at
the defendant over the shoulder of the attorney, Your Honor.  

 

            MR.
PUTMAN:          Judge, I cant help it if
Mr. Platten lied to the jury. 

 

            MR.
PLATTEN:         I did not lie to the
jury. 

 

            THE COURT:            Number one, Mr. Platten, your objection is denied.  Number two, your sidebar comment to Mr.
Platten just then, Jurors, disregard that. 
Make your argument to the jury. 

 

            At the time
of Plattens objection, Putman was, initially, not attacking Platten personally,
but was responding to Plattens suggestion that Officer Phillips testimony
should not be believed.  An answer to the
argument of opposing counsel challenging the credibility of a witness is proper
fodder for jury argument.  See Waites v. State, No. 06-09-00096-CR,
2010 WL 2477783, at *3 (Tex. App.Texarkana June 18, 2010, no pet.) (mem. op.,
not designated for publication); Blue v. State,
No. 14-09-00184-CR, 2010 WL 1655485, at *7 (Tex. App.Houston [14th Dist.] Apr.
27, 2010, no pet.) (mem. op., not designated for publication);[3]
Mijores v. State, 11 S.W.3d 253, 256
(Tex. App.Houston [14th Dist.] 1999, no pet.); Giesburg v. State, 945 S.W.2d 120, 126 (Tex. App.Houston [1st
Dist.] 1996), affd, 984 S.W.2d 245
(Tex. Crim. App. 1998).

            In direct
and immediate response to Plattens objection, however, Putman personally and
explicitly impugned Plattens character by claiming Platten lied to the
jury.  Clearly, this was improper.

            Both the
Texas Supreme Court and the Texas Court of Criminal Appeals have adopted The
Texas Lawyers CreedA Mandate for Professionalism in an attempt to eliminate
such abusive practices by lawyers.  Such
abusive practices do a disservice to citizens and demean the legal profession.  That Creed mandates that a lawyer will not attribute
bad motives or unethical conduct to opposing counsel or make disparaging
personal remarks . . . towards opposing counsel. . . .   The Texas Lawyers Creed-A Mandate for
Professionalism III (10) (adopted by the Supreme Court of Texas and The Texas
Court of Criminal Appeals Nov. 7, 1989), reprinted
in Texas Rules of Court 80405 (West 2010).

            We
often hear disparaging comments about lawyers, judges, and the legal system at
large.  Putmans conduct here encourages
and, in part, validates those who would attack our justice system.  If those of us in the legal system expect
citizens to respect the system and the rule of law, judges and lawyers must act
in a professional and respectful manner. 
In exercising their vital role of advocates in our system, lawyers must
behave professionally and ethically. 
Instead of inculcating public confidence in our legal system, Putmans
statements lacked that professionalism and embarrassed the system.

            Platten did
not, however, object to Putmans accusing him of lying; he simply denied the
accusation.  Though the statement that
Platten lied to the jury constituted a strike at a defendant over the shoulders
of defense counsel, the issue is not before us as a ground for reversal.  Also, the trial court recognized the improper
character of Putmans statement and directed the jury to disregard it.  See
Tex. R. App.
P. 33.1; Mijores, 11 S.W.3d at
256.[4]  This improper statement was not preserved for
our review, and the trial court provided Wreyford all she could have reasonably
asked for, the instruction that the jury disregard it.

            Wreyford also
argues the trial court erred in failing to sustain objections to Putmans
argument during the punishment phase.  To
place the argument into context, we review the record during Plattens closing
argument in the guilt/innocence phase. 
In closing argument, Platten stated: 

[PLATTEN:]   I hope I wasnt putting you to sleep when I
was asking these questions because that was not my intention.  I had to be as thorough as possible about
some of these things.  Because thats my
job.  My job is not to stand up here and
be a snake oil salesman and try to make something that its not.  Thats not what Im doing. 

  

 

 

            At
punishment, the following record was made:

 

            MR. PUTMAN:          Mr. Platten told you he wasnt a snake oil salesman.  Remember his closing argument?

 

            MR. PLATTEN:         Objection to striking at the defendant over the shoulder of
the attorney. 

 

            THE
COURT:            Denied.


 

            MR. PUTMAN:         Thats
exactly what he said is he wasnt a snake oil salesman.  I
disagree.  She got up here and said

 

            MR.
PLATTEN:         Objection for name
calling. 

 

            THE
COURT:            Denied.


 

            MR. PUTMAN:         She
got up here and told you her family is sick. 
She has responsibilities.  Please
dont punish me.

 

(Emphasis added.)  

 

            The
objection for name calling was an objection to striking at the defendant over
the shoulder of the attorney.  Tex. R. App. P.
33.1(a)(1)(A).  The objection was made in
response to another personal attack on Plattenthat he was a snake oil
salesman.  This remark, too, was
improper.[5]
 Wilson,
7 S.W.3d at 147; Mosley, 983 S.W.2d at 259 (argument suggesting
counsel wanted to divert jury from truth was assumed inappropriate).  The trial court should have sustained that
objection.  But, we do not believe that
error was reversible.

            Because
comments striking at the defendant over the shoulder of counsel have never
been held to amount to a constitutional violation, but instead constitute other
errors within the purview of Rule 44.2(b), we must follow the rule that [a]ny
other error, defect, irregularity, or variance that does not affect substantial
rights must be disregarded.  Mosley, 983 S.W.2d at 259; see Tex. R. App. P. 44.2(b); George v. State, 117 S.W.3d 285, 289
(Tex. App.Texarkana 2003, pet. refd). 
In making this determination, we weigh the severity of the misconduct
(the magnitude of the prejudicial effect of the prosecutors remarks), any measures
adopted to cure the misconduct, and the certainty of conviction absent the
misconduct (the strength of the evidence supporting the conviction).  Mosley,
983 S.W.2d at 25960; Hawkins v. State,
135 S.W.3d 72, 7576 (Tex. Crim. App. 2004).

            In Mosley, the prosecutors jury argument
contained a rather specific claim that defense counsel was attempting to divert
the jury from the truth:

There
is only one route to the truth.  It is by
traveling on the main road.  That will
take you to your proper destination.  But
you must stay on the main road.  The
defense has attempted to get you off the main road, to divert you.  They dont want you to stay on the main road
because they know where that will take you. . . .  They want you to take a side road, a series
of side roads, rabbit trails, and a rabbit trail that will lead you to a
dead-end.  The truth is not there.

 

Mosley, 983 S.W.2d at 258.  Mosley referred to federal caselaw[6]
in deciding these comments were mildly inappropriate, did not directly accuse
the defense attorneys of lying, did not suggest that any evidence was
manufactured, and did not inject new facts into evidence.  Id. at
260.  The appellate court stated, At
most, the comments indicate that the defense may be attempting to distort the
jurys view of the evidence through clever argument.  Id.  While it did not condone the prosecutors
actions, the court found the severity of the misconduct small.  Id.

            Here, while we condemn Putmans accusation and there
were no measures taken to ameliorate it, the evidence of Wreyfords
intoxication, the main contested fact issue, is pretty strong.  We conclude that the conduct had no or little
effect.  See id. at 25960.  We hold that there is no reversible error
here.

            We affirm the trial courts
judgment.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          February
9, 2011         

Date Decided:             February
16, 2011

 

Do Not Publish

 

 

 











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Govt Code Ann.
§ 73.001 (Vernon 2005).  We are unaware
of any conflict between precedent of the Twelfth Court of Appeals and that of
this Court on any relevant issue.  See Tex.
R. App. P. 41.3.

 





[2]Wreyford
also argues the evidence was factually insufficient to support her conviction.  Recently, a plurality of the Texas Court of
Criminal Appeals abolished the factual sufficiency review established by Clewis
v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996), and its
progeny.  Brooks v. State, 323
S.W.3d 893, 912 (Tex. Crim. App. 2010). 
The Jackson v. Virginia legal-sufficiency standard is the only
standard that a reviewing court applies in determining whether the evidence is
sufficient to support each element of a criminal offense that the State is
required to prove beyond a reasonable doubt.  Id.  Therefore,
we will not address the challenge to the factual sufficiency of the evidence.





[3]Although these unpublished cases have no precedential
value, we may take guidance from them as an aid in developing reasoning that
may be employed.  Carrillo v. State, 98 S.W.3d 789, 794 (Tex. App.Amarillo 2003,
pet. refd).





[4]Even
if Wreyford had objected to the comment that Platten lied to the jury, she
failed to preserve error by failing to request a mistrial.  Cook v.
State, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993) (to preserve jury
argument error for appellate review, defendant must (1) object, (2) request an instruction
to disregard, and (3) move for mistrial).





[5]Our
previous comments, in condemnation of Putmans liar accusation, apply here as
well.





[6]Mosley cited to the following cases in
support of its holding:  United States v. Millar, 79 F.3d 338,
34344 (2nd Cir. 1996)
(comments that defense of case was hog wash, that defense counsel had created
smoke screen, and trying to confuse jury and lead them astray clearly
did not rise to the level of severity to require reversal);  United
States v. Palmer, 37 F.3d 1080, 1086 (5th Cir. 1994) (comment that defense
attorney wanted to confuse jury and throw up a smoke screen did not require
reversal); United States v.
Ortiz-Arrigoitia, 996 F.2d 436, 440 (1st Cir. 1993) (prosecutors
statements to jury that defense attorneys want like to scramble your heads,
confuse you and wanted to confuse your head not so prejudicial to require
reversal).